369 So.2d 606 (1978)
BVA CREDIT CORPORATION, a Corporation, Appellant,
v.
John J. FISHER and Karen S. Garelick, As Personal Representative of the Estate of Ronald B. Garelick, Deceased, Appellees.
No. DD-331.
District Court of Appeal of Florida, First District.
September 21, 1978.
*607 D. Chanslor Howell of Howell & Deas, Jacksonville, for appellant.
Anderson M. Foote, Jr. of Ulmer, Murchison, Ashby & Ball, Stanley B. Gelman of Gelman & Rolfe, Jacksonville, for appellees.
BOYER, Judge.
Appellant filed its complaint for damages against appellees, guarantors to appellant of all accounts due and owing to appellant by Thursday Publications, Inc. d/b/a The Jacksonville Chronicle[1] based upon an equipment lease agreement under which Thursday Publications defaulted after making only one payment. The trial court entered final judgment in favor of appellant, but appellant, being dissatisfied with the amount of damages awarded, has appealed. The sole issue presented by this appeal is whether the trial court was correct in its conclusion that appellant, by re-letting the equipment covered by the lease and ultimately selling the equipment, made an election between two inconsistent substantive rights and thereby terminated its right to recover payments of rent which had not yet become due prior to re-letting.
By lease dated June 10, 1974, appellant leased certain equipment to Thursday Publications for a monthly rental of $520.72 over a period of 60 months. After making only one payment, Thursday Publications defaulted. By guaranty dated October 2, 1973, John J. Fisher and Ronald B. Garelick had guaranteed to appellant all obligations of Thursday Publications. The guaranty was by its terms unconditional and not to be impaired in any manner.[2] According to appellant's collection manager, appellant, after default by Thursday Publications, released the equipment to D & C Investments, Inc., by lease dated October 9, 1974.[3] After making three payments under the new lease, D & C Investments defaulted. Appellant then repossessed the property and sold it, after duly giving notice to appellees *608 of the impending sale.[4] At trial, appellant sought damages totalling $25,739.49 which figure was computed by subtracting from the total payments due under the lease with Thursday Publications the one payment made by Thursday Publications, the three payments by D & C Investments, and the proceeds from the sale of the equipment. The trial court concluded that Thursday Publications and, therefore, appellees, owed appellant only three months rent under the lease.
The final judgment of the trial court rests upon two conclusions of law: First, that a lessor of personal property may retake leased property after default, lease it for the account of the lessee and recover the deficiency from the lessee only if the lease expressly reserves that right; second, that appellant's re-leasing of the property to D & C Investments constituted an election between that remedy and recovering the difference between the sale price of the leased property and the balance of the payments due under the lease from appellees.
In concluding that there must be an express provision in the lease reserving the right of the lessor to take possession of leased personal property and to re-lease the property for the account of the lessee, the trial court relied upon Bidwell v. Carstens, 316 So.2d 264 (Fla. 1975), Cutler Gate Building Corp. v. U.S. Leasing, 165 So.2d 207 (Fla. 3rd DCA 1964), and Monsalvatge and Co. of Miami v. Ryder Leasing, Inc., 151 So.2d 453 (Fla. 3rd DCA 1963). Those cases, however, do not stand for that proposition. In the two latter cases, the lessor, after the lessee defaulted, took possession of the leased property and brought suit for the full amount due under the lease. Neither case reveals an attempt by the lessor to re-lease the property or sell it.
In the Monsalvatge case the lessor declared the lease terminated. The appellate court, noting that fact, and that upon termination the lessee was obligated by the terms of the lease to return the equipment to the lessor, and did in fact make an offer to return, held that it would be inequitable and unjust to allow the lessor to have payment of all sums due under the lease and at the same time have the use and benefit of the leased property. In the Cutler Gate Building Corp. case the opinion reveals that the leased equipment was returned to the lessor "within a space of some three months after it had been placed with" the lessee. Citing and quoting from the Monsalvatge case, supra, the Third District there held that under the circumstances of that particular case the lessor's damages should be limited to the rents which had accrued but remained unpaid at the time of the surrender or repossession of the equipment, together with interest, costs and attorney's fees. The Supreme Court of Florida, in the Bidwell case, discussed both Monsalvatge and Cutler Gate. Although the court there quoted a provision of the lease there involved which authorized the lessor to take possession of the leased property and to re-lease it or sell it for the account of the lessee, it does not appear that the recitation of that lease provision was a necessary basis for the court's holding. The Bidwell case is, however, analogous to the case sub judice. In that case, the lessor, after the original lessee defaulted, leased the property to a second lessee, who also defaulted and returned the leased property to the lessor. One year thereafter, the lessor sold the property and brought suit against the original lessee for the remainder of the payments due under the original lease, deducting therefrom the proceeds from the sale of the property. The trial court found for the lessor, and the District Court affirmed. On certiorari, the Supreme Court also allowed recovery but determined that the lessor's damages should be reduced by virtue of the beneficial possession by the lessor during the one year period which lapsed between the date of repossession of the property from the second lessee and the sale of the property. In none of the three cited cases is there a holding that the lessor's remedy *609 of taking possession of leased personal property after default and leasing it or selling it for the account of the lessee must be expressly reserved in the lease.
All parties assert applicability of the Uniform Commercial Code and rely upon various provisions thereof. Whether or not a bona fide lease not intended as a security agreement is governed by the Uniform Commercial Code[5] we need not here determine because, first, as above recited, the parties have all stipulated to its applicability sub judice and, second, a provision of the particular lease here involved invokes the Uniform Commercial Code and provides for the execution and filing of a financing statement pursuant thereto.[6] Clearly, F.S. 679.504 provides that a secured party may, after default, sell, lease or otherwise dispose of any or all of the collateral and apply the proceeds toward the satisfaction of indebtedness secured by the security interest under which the disposition is made. F.S. 671.201(37) defines "security interest" and provides
"* * * Unless a lease or consignment is intended as security, reservation of title thereunder is not a `security interest' * * *. Whether a lease is intended as security is to be determined by the facts of each case; * * *"
The facts of this case reveal that the parties intended the particular lease here involved as security. The lease itself contained a specific provision (paragraph 13) providing for the filing of a financing statement "pursuant to the Uniform Commercial Code" which provision recited the purpose of such filing to be "to perfect lessor's security interest". Further, a financing statement designating appellant as "secured party" was in fact filed with the Secretary of State.
We conclude, therefore, that the principles of law applicable to mitigation of damages permits a lessor of personal property to re-lease the property or sell the property after default for the account of the lessee and recover the deficiency from the lessee whether or not the lease expressly so provides and that under the pertinent provisions of the Uniform Commercial Code, which is applicable under the facts of this case, the re-leasing and subsequent sale of the leased property did not constitute an election between inconsistent remedies.[7] It necessarily follows that in this case, as in Bidwell v. Carstens, supra, appellant is entitled to recover from appellees a sum equal to the aggregate of the installments provided by the lease reduced by the installments actually paid under the original lease and the re-lease and reduced further by the amount realized from the sale of the leased property, plus interest, costs, and attorney's fees. Attorney's fees incident to the trial court proceeding and incident to this appeal shall be determined in the trial court and included in the judgment.
Reversed and remanded for further proceedings consistent herewith.
McCORD, C.J., and MILLS, J., concur.
NOTES
[1] The original defendants in the trial court and appellees here were John J. Fisher and Ronald B. Garelick. The latter died during the pendency of this appeal and his personal representative was substituted as a party appellee.
[2] The guaranty provided, inter alia, that: "This is an unconditional guaranty of payment and not of collection. You may collect such indebtedness, or any part thereof, from undersigned (or any one or more of them) without first exercising your rights against obligor or any leased equipment or collateral. * * * You shall have the right to waive your rights against and to release any guarantor and any collateral without thereby affecting the enforcement of this guaranty against any of undersigned not expressly released."
[3] Appellant and D & C Investments, Inc. had been "brought together" by Ronald B. Garelick after the default by Thursday Publications.
[4] This case is, by virtue of such notice, distinguished from Equilease Corporation v. Dickerson (Fla. 1st DCA 1978), Opinion filed May 16, 1976, Case No. GG-145. See also Barnett v. Barnett Bank of Jacksonville N.A., 345 So.2d 804 (Fla. 1st DCA 1977).
[5] See DeVita Fruit Company v. FCA Leasing Corporation, 473 F.2d 585 (6 Cir.1973).
[6] See Southeast First National Bank of Maitland v. LeGrace Co., Inc., 359 So.2d 1223 (Fla. 1st DCA 1978). See also Barnett v. Barnett Bank of Jacksonville N.A., supra.
[7] The record is clear that appellees, who were the guarantors of payment of the indebtedness created by the lease, were seasonably notified of both the re-leasing and the sale: Therefore the principle of Barnett v. Barnett Bank of Jacksonville supra, was complied with.