460 So.2d 540 (1984)
UNITED CHEMICALS, INC., a Pennsylvania Corporation, Appellant/Cross Appellee,
v.
Roy WELCH, d/b/a Welch Lift Truck, Appellee/Cross Appellant.
No. AV-350.
District Court of Appeal of Florida, First District.
December 13, 1984.
Ronald A. Mowrey and David J. Russ of Ronald A. Mowrey, P.A., Tallahassee, for appellant/cross appellee.
Marion D. Lamb, Jr., Guyte P. McCord, III, and Gregory D. Smith of MacFarlane, Ferguson, Allison & Kelly, Tallahassee, for appellee/cross appellant.
*541 MILLS, Judge.
United Chemicals, Inc. (United) appeals from a final judgment entered against it for breach of long term heavy equipment leases. Welch cross appeals challenging the damage award. We affirm.
Welch, doing business as Welch Lift Truck, filed suit against United alleging United breached two 60-month forklift leases. A nonjury trial ensued. The trial court found United entered into two 60-month leases with Welch, complied with the terms of the leases for 18 and 16 months respectively, and then breached the leases by refusing to pay the monthly rent. Welch was awarded $13,420 damages.
United contends it never entered into or ratified the leases. Alternatively, it contends it only entered into month-to-month leases. In addition, both Welch and United argue the damage award was improper even if United breached long term leases. We find United ratified the leases.
The forklifts were delivered to United's Gulf States chemical repackaging plant at Lloyd. One forklift was delivered prior to 25 June 1981, the other on 10 August 1981. At the time of each delivery, a United employee signed documents Welch contends are lease agreements. United contends these documents are nothing more than delivery receipts. Whatever the case, the documents specified a monthly rent. The first specified $735 monthly. The second specified $675 monthly.
Following delivery, Welch submitted monthly invoices to the Gulf States plant for the rents. United paid the rents in the regular course of business until November 1982 when it notified Welch by letter it considered the leases void and would no longer pay the rents. Welch testified that prior to the Fall of 1982, he was never led to believe there was no binding contract. He testified that on four separate occasions he forwarded copies of what he considered lease agreements to United.
Moran, a stockholder and officer of United who had the authority to enter into long term heavy equipment leases for the corporation, testified he first became aware that Welch considered the forklifts on 60-month lease to United in the late summer of 1981. Moran testified he directed a United employee, Walsh, to make it clear to Welch that United considered the forklifts leased on a month-to-month basis. Moran said Walsh told him in the Fall of 1981 he had been unable to resolve the matter. At that point, according to Moran, Moran called Welch's office and informed the woman who answered the telephone that United considered the forklifts leased month-to-month. Welch, however, said he never received such a message from Moran or from anyone at United. Moran admitted he had no more contact with the Welch's office until November 1982.
Although the testimony was conflicting on the issue of whether United took steps before November 1982 to inform Welch it did not believe it had entered into 60-month leases, we assume the trial court as factfinder resolved the conflict in a manner consistent with the result reached. Taking this view, Moran, despite being fully informed of the controversy, continued to allow United to rent the forklifts from Welch without informing Welch of United's position and knowing Welch was under the assumption that 60-month leases were in effect. This is tantamount to ratification of the leases because, simply stated, the doctrine of ratification precludes the principal from accepting the benefits of an agent's actions while simultaneously disclaiming the agent's authority to act. C.Q. Farms, Inc. v. Cargill Inc., 363 So.2d 379 (Fla. 1st DCA 1978).
United argues that the damage award was excessive. Its primary contention is that a lessor of personal property may not recover the property upon default and collect all sums due under the lease absent a specific contractual provision to that effect.
Yet, in BVA Credit Corp. v. Fisher, 369 So.2d 606 at 609 (Fla. 1st DCA 1978), this Court stated:
[T]he principles of law applicable to mitigation of damages permits a lessor of personal property to re-lease the property *542 or sell the property after default for the account of the lessee and recover the deficiency from the lessee whether or not the lease expressly so provides... .
Unlike the case before us, BVA also involved the question of whether under applicable provisions of the Uniform Commercial Code a re-leasing and subsequent sale of the leased property constituted an election between inconsistent remedies. But from this distinction we cannot say, as United apparently would have us say, that the language quoted above is limited to leases governed by the U.C.C. We therefore reject this argument concerning the measure of damages on authority of BVA.
In addition, United challenges the damage award on the basis that Welch made no effort to re-lease the forklifts for United's benefit. See, Wolf v. Buchman, 425 So.2d 182 (Fla. 3d DCA 1983).
There was evidence presented at trial from which the trial court could find Welch made a good faith effort to re-lease the forklifts for United's benefit. Although the opposite conclusion may have also been drawn from the evidence presented, we will not usurp the trial court's factfinding role.
Welch argues that the award was inadequate. He contends the damages should have been the sum of all unpaid rental payments due for the duration of the leases less any amounts recovered by the lessor in mitigation. This formula, however, ignores the uncontroverted fact that Welch was responsible for maintenance on the forklifts during the lease periods. Given the evidence of Welch's monthly maintenance expenses prior to the breach, the trial court could have arrived at an average monthly maintenance expense which, when multiplied by the number of months remaining on the leases, would provide an appropriate figure to be subtracted from the damage award calculated according to Welch's formulation.
Considering the evidence of Welch's expenses under the terms of the leases, we cannot say the amount awarded is either excessive or inadequate.
AFFIRMED.
ERVIN, C.J., and ZEHMER, J., concur.