**GOLDEN DOOR JEWELRY CREATIONS, INC., Suisse Gold Assayer & Refinery, Inc., Plaintiffs,**

**Leach & Garner Co., Westway Metals Corp., Capital Bank, Stern Metals Corp., Plaintiffs/Intervenors,**

v.

**LLOYDS UNDERWRITERS, Peter Frederick Wright, Defendants,**

**Sanford Credin, Lawrence Systems, Inc., Intervenors–Defendants.**

**LEACH & GARNER CO., Plaintiff,**

v.

**Peter Frederick WRIGHT, Defendant.**

Nos. 83–1409–CIV, 84–0354–CIV.

United States District Court, S.D. Florida.

May 10, 1995.

Ronald B. Hamilton, Cozen & O'Connor, Philadelphia, PA, for Leach & Garner Co.

Henry Burnett, Steven E. Stark, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, FL, for Lloyds Underwriters and Peter Frederick Wright.

Herbert P. Polk, Manhasset, NY, Sam Daniels, Barranco & Associates, Miami, FL, for Lloyds Underwriters.

Joseph L. Rebak, Tew, Garcia–Pedrosa & Beasley, Miami, FL, for Westway Metals.

John H. Phelan, Kimbrell & Hamann, Miami, FL, William Reese, Wicker, Smith, Blomqvist, Tutan O'Hara, McCoy, Graham, & Lane, Miami, FL, for Lawrence Systems.

*MEMORANDUM OPINION AND ORDER GRANTING FINAL SUMMARY JUDGMENT FOR PLAINTIFF/INTERVENORS LEACH & GARNER COMPANY AND WESTWAY METALS CORPORATION AND DENYING DEFENDANT LLOYDS UNDERWRITERS' MOTIONS FOR SUMMARY JUDGMENT*

ARONOVITZ, District Judge.

THIS CAUSE came before the court upon numerous filings following and in response to the December 6, 1993, opinion and order of U.S. Court of Appeals for the Eleventh Circuit. *See Golden Door Jewelry Creations,*

*Inc. v. Lloyds Underwriters Non–Marine Association,* 8 F.3d. 760 (11th Cir.1993) *(Golden Door III ).* That order vacated certain final judgments this court had previously entered on behalf of the plaintiff/intervenors, Leach & Garner Company and Westway Metals, Inc. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters,* 748 F.Supp. 1529 (S.D.Fla.1990) *(Golden Door I );* *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters,* 758 F.Supp. 708 (S.D.Fla.1991) *(Golden Door II ).*

## 1. Background

In *Golden Door I,* this court set forth the background of this case:

> In March, 1982, plaintiff corporations purchased a series of insurance policies from underwriter Wright, as issued by defendant Lloyds. The policies, known as "Jewellers' [sic] Block Policies," were to provide each respective plaintiff with up to $6 million worth of protection for its jewelry stock, or for jewelry delivered or otherwise entrusted to the assured by dealers or non-dealers as against a number of risks faced by goods of such type, including theft.

> On February 10, 1983, plaintiff corporations suffered at the hands of parties then unknown a robbery, losing a combined total in excess of $9 million in assorted items in their possession or in the possession of their field warehouser, Lawrence Systems, Inc. Defendant Lloyds refused payment on the policies, and this suit—a once seemingly innocuous breach of contract action—resulted.

> The plaintiff corporations' Amended Complaint requests payment on the underlying series of policies, and seeking damages against Wright for his alleged breach of his "implied duty as an insurer to deal fairly and in good faith with the Plaintiffs." Among other defenses, Lloyds asserts, in its Answer to the amended complaint, that upon information and belief, the robbery had resulted from an act of dishonest character on the part of the assureds or his or their employees, and coverage was therefore excepted under Paragraph 5(A) of the policies at issue.

748 F.Supp. 1529, 1532 (footnote omitted; record citations withheld).[1]

On October 11, 1990, this court entered an Order Granting Plaintiff/Intervenors Leach & Garner Company and Westway Metals Corporations' Motions for Summary Judgment and Addressing Defendant Lloyds Underwriters' Motions for Summary Judgment and/or Other Relief Requested. *Golden Door I,* 748 F.Supp. 1529. The court denied all claims by plaintiffs Sanford Credin, Golden Door Jewelry Creations, Inc. and Suisse Gold Assayer & Refinery, Inc. ("the assured" or "the insured") as to any and all relief sought. The court also reformed the insurance policies held by those assured to reflect that intervenors Westway Metals, Inc. and Leach & Garner Company (the consignors), the owners of goods consigned to the assured, were named as lender loss payees and/or named co-insured. Following that reformation, this court granted summary judgment in favor of the consignors. Finally, the court denied the claims to the proceeds of the policies by creditors Stern Metals and Capital Bank, because unlike Leach & Garner and Westway, Stern and Capital held claims against the proceeds of the policy but not against the policy itself. Because they claimed through the named insured who were not entitled to recovery, no proceeds existed against which they might recover.

On February 21, 1991, on motions for reconsideration and other relief, this court entered an Omnibus Order Addressing Post-Order (10/11/90) Motions. *Golden Door II,* 758 F.Supp. 708. The court reaffirmed the judgment in favor of the intervenors Westway and Leach & Garner **on the basis of actual legal liability of the assured to the consignors.** The court reaffirmed that the consignors' rights of recovery were not rights against the proceeds of the policies and therefore derivative of the rights of the named insured. Instead, the consignors possessed rights against the policies themselves.

*Golden Door III,* 8 F.3d. 760 (11th Cir.1993).

---

**1.** For further background, see *Golden Door I,* 748 F.Supp. 1529; *Golden Door II,* 758 F.Supp. 708;

Thus the admitted guilt of one of the named insured would not preclude recovery. The court also denied other requested reconsideration. Finally, the court modified the amounts of the judgments in favor of Leach & Garner and Westway and awarded prejudgment interest.

Lloyds appealed to the Eleventh Circuit, raising ten issues. The Eleventh Circuit reversed the policy reformation and vacated the judgments in favor of the consignors. *Golden Door III,* 8 F.3d. 760. The court noted that the other nine issues were either subsumed or rendered moot by its analysis of the reformation.

This *court now addresses the following* motions subsequently filed:

1) Defendant's First Motion for Summary Judgment, file dated October 12, 1994,

2) Defendant's Second Motion for Summary Judgment, file dated October 27, 1994,

3) Defendant's Third Motion for Summary Judgment, file dated November 8, 1994,

4) Westway Metal Corp's Motion for Summary Judgment Against Suisse Gold, file dated November 21, 1994,

5) Westway Metal Corp's Motion for Summary Judgment Against Peter Frederick Wright et al [Lloyds], file dated November 21, 1994,

6) Motion of Leach & Garner Company for Summary Judgment Against Defendants Pursuant to Federal Rule of Civil procedure No. 56, file dated November 21, 1994.

The court has considered all six motions, responses and replies, the pertinent portions of the record, and on February 9, 1995, heard lengthy oral argument, concluding on February 10, 1995, the twelve-year anniversary of the incident which spawned this litigation.

Each of Lloyds' three motions for summary judgment fails legally. None of the policy's provisions preclude the consignors from recovering their losses from Lloyds. No genuine issues of material fact exist that preclude summary judgment in favor of the consignors.

**2. The 11th Circuit Remand**

By its opinion, the Eleventh Circuit issued a specific remand. The court vacated this court's reformation and the two judgments associated with it. Consistent with that, the court directed this court to address two other issues on remand. *Golden Door III,* 8 F.3d at 768. This court has already addressed the second issue, involving the payment of fact witnesses. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Association,* 865 F.Supp. 1516 (S.D.Fla.1994) (*Golden Door IV*). The following excerpt from the 11th Circuit opinion defines the scope of the first now before this court:

> Once the district court reformed the policy ... it then proceeded to clarify its reformation and held that consignors were not subject to the exclusions placed in paragraph 5(A) of the policy. That exclusion foreclosed coverage for

> > [l]oss, damage or expense caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character (1) on the part of the Assured or his or their employees, or (2) on the part of any person to whom the property hereby insured may be delivered or entrusted ...

> Lloyds, first, appeals this determination; and, second, asks this court to rule as a matter of law that Mr. Credini's [sic] admitted theft of the gold precludes all coverage for consignors under this policy.

> The district court's determination necessarily is reversed by the holding in Part II.B., above; thus, the first part of Lloyds requested relief is granted. This court may not, however, accede to Lloyds' wishes as to their second request for relief. At this point in the litigation, the guilt or innocence of Mr. Credini and other parties has not been established before the district court. In fact, based on its determination that consignors possessed a direct right of recovery, the district court specifically did not rule on or even discuss the potential efficacy of any defenses based upon the alleged misdeeds of Mr. Credini [sic] and plaintiff corporations. **Thus, the question of whether the facts of this case satisfy**

this coverage exclusion must be determined by the district court on remand. *Golden Door III*, 8 F.3d at 768 (emphasis added). This discussion concerns only Paragraph 5(A) in the policy. The 11th Circuit's statement of Lloyds' dual-pronged request is concise. First, reverse the determination that consignors were not subject to the exclusions in ¶ 5(A), which precludes coverage for theft. Second, rule that Credin's admitted theft precludes coverage. Although the statement of the second prong does not specifically mention ¶ 5(A), that provision is the topic of the discussion. Moreover, ¶ 5(A) is the only policy provision under which Credin's admitted theft could preclude coverage. Furthermore, the final statement directs a determination of "whether the facts of this case satisfy **this coverage exclusion** . ." (emphasis added). Thus, the Eleventh Circuit directed this court to address ¶ 5(A).

### 3. The dishonest acts exclusion—Paragraph 5(A)

Paragraph 5(A) excludes coverage for loss caused by the dishonest act by the Assured or its employees:

> 5. This Policy insures against all risks of loss of or damage to the above described property arising from any cause whatsoever
>
> EXCEPT:
>
> A. Loss, damage or expense caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character (1) on the part of the Assured or his or their employees, or (2) on the part of any person to whom the property hereby insured may be delivered or entrusted ...

As the Eleventh Circuit noted, Credin's guilt had not been established before this court when this court considered this provision. In its Defendant's Appendix to Second Motion for Summary Judgement, file dated October 27, 1994, Lloyds has filed a transcript of the criminal proceedings in which Credin entered his guilty plea in *U.S.A. v. Sandy Credin,* Case No. 88–10–CR–KEHOE (S.D.Fla.1989). The following dialogue between The Honorable James W. Kehoe and the defendant, Sandy Credin, occurred:

THE COURT: All right. Would [counsel] and Mr. Credin please come to the microphone?

Mr. Credin, I have been advised that you desire to enter a plea of guilty in this case. Is that correct sir?

THE DEFENDANT: Yes, under certain conditions, sir.

THE COURT: All right. And are you doing so because you yourself personally want to enter a plea of guilty?

THE DEFENDANT: That is right sir.

THE COURT: And are you doing so because you are guilty of the offense to which you are pleading guilty?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Please swear the Defendant. (The Defendant, SANDY CREDIN, is duly sworn)

\* \* \* \* \* \*

THE COURT: All right, sir. Mr. Credin, how do you now plead; guilty or not guilty?

THE DEFENDANT: Guilty, sir.

THE COURT: All right, Mr. Credin. This Court finds that you are alert, you are an intelligent individual, that you understand the nature of the charges against you and appreciate the consequences of entering a plea of guilty. I further find that you understand the possible penalties that may be imposed upon you and that you fully understand the nature of your rights.

I further find that the facts which the Government is prepared to prove, and which by your plea you have admitted, are sufficient to sustain your plea. The Court further finds that the evidence which the Government is present contains all of the elements of the crime charged.

I find you guilty of count six in the indictment. And I adjudicate you to be guilty of count six in the indictment.

Appendix pp. AA21, AA41. Count VI of the indictment alleges that Credin and others conspired "to devise a scheme and artifice to defraud and for obtaining money and property from Lloyds by means of false pretenses ... The manner and means of execution of

this conspiracy are set out in paragraphs 14 and 15 ..." App. p. AA188.

14. It was the object of this scheme and artifice to induce Lloyds to pay monies to the defendant SANDY CREDIN by the submission of a false and fraudulent claim for robbery under the aforementioned insurance policies.

15. The scheme and artifice substantially consisted of the following: On various occasions for an unknown period of time up to and including February 10, 1983, the defendant SANDY CREDIN unlawfully entered the safes of Lawrence Systems and stole the gold supplies which were the property of Leach and Garner and Westway, and embezzled the gold of Golden Door and Suisse Gold, to pay his casino gambling losses. In order to conceal his theft and embezzlement from detection by Lawrence Systems, the defendant SANDY CREDIN arranged with Pierre Sarasin and another person to stage a fictitious robbery at 1585 NW 163rd Street, North Miami, so that it would appear that the gold had been stolen in a casualty loss which was covered by the · Lloyds insurance policies. When this attempt to stage a fictitious robbery had to be aborted on or about January 23, 1983, the defendant SANDY CREDIN submitted a claim to Lloyds alleging that as a result of the "robbery" his companies, Golden Door and Suisse Gold, had lost approximately $9,866,318.12 worth of gold belonging to Golden Door, Suisse Gold, Leach and Garner and Westway ...

App. p. AA12–13. Because Credin plead guilty to the conspiracy charges associated with the theft, Lloyds suggests that ¶ 5(A) excludes all policy coverage.

In answering a certified question from the Fifth Circuit regarding a similar situation, the Florida Supreme Court held that, in the absence of a provision specifically excluding such coverage, third-party beneficiaries were not precluded from recovery by the intentional criminal acts of the insured. *Everglades Marina, Inc. v. American Eastern Development Corp.*, 374 So.2d 517, 519 (Fla. 1979). Here, the policy contains such an exclusionary provision in ¶ 5(A).

█ Credin would be precluded from recovery under ¶ 5(A)(1), as he committed the "dishonest act." The intentional fraudulent act of a co-insured does not however bar recovery for the innocent co-insured. *Auto–Owners Insurance Co. v. Eddinger*, 366 So.2d 123, 124 (Fla. 2d DCA 1979); *Owl & Turtle, Inc. v. Travelers Indemnity Co.*, 554 F.2d 196 (5th Cir.1977). In other words, Credin's dishonest acts do not preclude Suisse Gold and Golden Door from recovery. The court must determine whether or not ¶ 5(A) preclude recovery by the consignors.

In *State Farm Fire and Cas. Ins. Co. v. Kane*, this court stated that "unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent coinsured." 715 F.Supp 1558, 1561 (S.D.Fla.1989) (quoting *Sales v. State Farm Fire and Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir.1988)). "Where the coverage and exclusion are defined in terms of 'the insured,' by contract, the insurance contract between the insurer and the several insureds is considered to be separable rather than joint." *Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1448 (S.D.Fla.1989) (cite withheld). Paragraph 5(A) excludes loss from theft "on the part of the Assured or his or their employees." (emphasis added). In addition to the language of the policy in ¶ 5(A), separability is further evidenced by the two types of insurance coverage—property and liability. *See Golden Door III*, 8 F.3d at 765; *McCranie*, 716 F.Supp. at 1447; *Overton v. Progressive Ins. Co.*, 585 So.2d 445, 447 (1991).

This court in *Golden Door I* stated that the Assured under the policy are Golden Door, Suisse Gold and Sandy Credin. 748 F.Supp at 1532. Credin is therefore an Assured, but he is not the **Assured,** in terms of the policy language. In other words, due to the separable nature of the policy, Credin's "dishonest act" bars recovery for Credin, not for the assureds or the consignors. *Hildebrand v. Holyoke Mutual Fire Ins. Co.*, 386 A.2d 329, 331 (Me.1978) (Exclusions apply to the specific insured who caused the loss and sought recovery).

**1156**

Paragraph 5(A) does not preclude recovery unless the Assured has committed a dishonest act in violation of ¶ 5(A). The court must determine whether the corporate insureds also violated the provision—whether Credin's dishonest acts can be imputed to the corporations or whether Credin is in fact an "employee of the Assured," pursuant to ¶ 5(A).

■  First, Credin's dishonest acts are not imputed to Golden Door and Suisse Gold. Generally, the knowledge an agent acquires or the acts he commits within the scope of his authority are imputed to the principal. *Lanchile Airlines v. Connecticut General Life Insurance Co.*, 759 F.Supp. 811, 814 (S.D.Fla.1991) (cite withheld); *Joel Strickland Enterprises v. Atlantic Discount Co.*, 137 So.2d 627, 629 (Fla. 1st DCA 1962). Under Florida law, the knowledge and misconduct of a corporate agent "will not be imputed to a principal if [the] agent is 'secretly ... acting adversely to the principal and entirely for his own or another's purposes.'" *Id.* (emphasis added); *Joel Strickland*, 137 So.2d at 629. When conspiring to embezzle and embezzling the gold, Credin was acting adversely to the corporation's interests.

■  Lloyds asserts that even if Credin was acting adversely and for his own purpose, his knowledge and acts should be imputed to the insured corporations, because Credin was the sole actor on the transaction. The sole actor doctrine provides that where the agent is the sole representative in the transaction, the principal will be charged with the agent's knowledge if the principal seeks to retain the benefit of the transaction. *Vail National Bank v. Finkelman*, 800 P.2d 1342, 1345 (Col.App.1990). Neither Suisse Gold nor Golden Door sought to benefit from Credin's crime upon learning of it. The doctrine is inapplicable here and has no Florida case support.[2] Credin's acts are not imputed to the corporations.

■  Second, Credin is not an employee of Suisse Gold or Golden Door. Lloyds argued that Credin is an "employee" of the assured pursuant to ¶ 5(A). In support Lloyds asserts testimony by Credin and an affidavit by counsel for Leach & Garner referring to Credin as an employee of the corporations. Oral references to Credin as an employee does not qualify him as an employee for purposes of the policy. The court looks to the language of the policy itself to determine the meaning of its terms.

The policy distinguishes between employees and corporate officers.[3] A separate exclusion provision, ¶ 5(H), excludes coverage for property worn by "the Assured, officer of the corporation, member of the firm, director, agent, employee, servant, or messenger of the Assured." The inclusion in ¶ 5(H) of both employee and officer indicates a distinction between the two terms. Moreover, the employment of the different categories of people indicates an intent to cover all people involved with the assured.

The adoption of the expansive language in ¶ 5(H) demonstrates that the drafter of the policy had contemplated a policy exclusion that would cover any person associated with the Assured. The exclusion in ¶ 5(A), on the other hand, is much more limited in scope, covering only the Assured and "employees." Clearly Credin is a corporate officer. The coverage exclusion of ¶ 5(A) does not cover acts by officers. Had Lloyds, as the policy's drafter, intended to cover such acts, Lloyds could have employed the same exhaustive language as that utilized in ¶ 5(H).

Thus, ¶ 5(A)(1) excludes policy coverage only with respect to the loss suffered by Credin and caused by Credin. The policy does not exclude those losses caused by Credin but suffered by the innocent insureds and third-party beneficiaries. Similarly, ¶ 5(A) does not preclude the consignors from recovery.

---

2.  The consignors argue that Florida courts would not adopt the "sole actor" argument. *See State Department of Insurance v. Blackburn*, 633 So.2d 521 (Fla.App 2d DCA 1994).

3.  The Supreme Court of Florida has also drawn a distinction between corporate officers and employees. *Flight Equipment & Engineering Corp. v. Shelton*, 103 So.2d 615, 623 (1958) ("It is the nature of his position in relation to the corporation which determines whether he was an officer or an employee.").

Lloyds also argues that ¶ 5(A)(2) precludes recovery. Paragraph 5(A)(2) excludes coverage when the loss is caused by "any person to whom the property hereby insured may be delivered or entrusted ..." Lloyds asserts that the property was entrusted to Lawrence Systems not the corporations; thus, none of the intervenors' property is covered. In *Golden Door II*, this court found that Westway entrusted its gold to Suisse Gold and Leach its gold to Golden Door. 758 F.Supp. at 712–13. That finding has been neither vacated nor reversed. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir.1984). Because the corporations have not committed dishonest acts, ¶ 5(A)(2) would not preclude the corporations and does not preclude the consignors from recovery.

Paragraph 5(A) does not exclude all coverage under the policy in this case. The consignors are not precluded by ¶ 5(A) from recovery against Lloyds.

### 4. Lloyds' Three Motions for Summary Judgment

"In accordance with Fed.R.Civ.P. 56 and the seminal interpretation of Rule 56, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment is inappropriate if genuine issues of material fact remain." *Golden Door III*, 8 F.3d at 764.

■ Each of Lloyd's three motions for summary judgment follows the same reasoning. Lloyds asserts that the consignors claim through the assured and subject to the terms and conditions of the policies. Because the assured on the policy are precluded from recovery, Lloyds argues the consignors are also precluded from recovery. Each of the three summary judgment motions asserts a different ground for denying coverage to the assured: (1) the inventory clause of ¶ 8(A); (2) the false proof of loss provision of ¶ 21; and (3) the dishonest acts exclusion of ¶ 5(A). *See infra.*

The consignors contend that they do not claim "through the insured." Rather, they are third-party beneficiaries making claims under the insureds' legal liability for lost ¶ 3(C) property—the gold and precious metal held by the plaintiff corporations on consignment from Leach & Garner and Westway.

*Reversing this court's reformation of the policy to include the consignors as named co-insured,* the Eleventh Circuit noted:

[T]he record indicates that there was a meeting of the minds as to the coverage Lloyds was extending to consignors. Both Lloyds and Mr. Schwartz (on behalf of Golden Door and Suisse Gold) assumed that consignors would have coverage; the coverage they anticipated, however, was *within the terms and exclusions of the policy.* Therefore, if a genuine theft had occurred, Lloyds acknowledges that consignors would have recovered their losses. It is also apparent that neither party contemplated that consignors' rights were outside the terms of the policy ...

\* \* \* \* \* \*

*Here, the parties did not agree to coverage of consignors as lender loss payees or named co-insureds.* Rather, the parties provided for consignors under the usual terms of the contract.

*Golden Door III*, 8 F.3d at 767. The rights of the consignors appear in the liability portion of the policy. The Eleventh Circuit agreed with this court that "the policy's language clearly and specifically encompasses legal liability." *Id.* at 765. The insured corporations' legal liability is established by their mutual failure to return the goods held on consignment from Leach & Garner and Westway, pursuant to the terms of those companies' respective consignment agreements. *Golden Door I*, 748 F.Supp. at 1536–37, 1543. The Eleventh Circuit neither vacated nor reversed those findings. *See Federated*, 452 U.S. at 398–99, 101 S.Ct. at 2428; *Wheeler*, 746 F.2d at 1440.

The consignors may recover directly against the insurer without first obtaining verdicts against the insureds.[4] The Eleventh Circuit noted the following:

---

4. Westway moved for summary judgment against

Suisse Gold on Count II of Westway's Interve-

The court need not address one issue raised by consignors, to wit, the applicability of § 627.7262, Fla.Stat. (1991). Lloyds concedes that this statute does not apply to jewelers' block policies. Given this admission, the court does not address the issue but notes that Lloyds is now precluded from raising the statute as a defense to a direct suit by consignors.

*Golden Door III,* 8 F.3d at 765, n. 7. That statute, now codified as Fla.Stat. § 627.4136 requires that a non-insured first obtain a settlement or verdict against the insured before maintaining a cause of action against a liability insurer. That statute inapplicable here, the consignors may recover directly against Lloyds, provided the terms and conditions of the policy do not preclude recovery.

The reasoning of Lloyd's motions for summary judgment fails. The consignor's do not claim "through the insured." Irrespective of the assured's inability to recover on the policy, the assured are legally liable to the consignors and the policy covers such legal liability. The consignors claim against the insurer under that legal liability in the policy.

### 5. The Consignors' Motions for Summary Judgment

Both Westway and Leach and Garner move for summary judgment in their favor, asserting that no policy provision or legal theory precludes them from recovery against Lloyds.[5]

As the consignors claim exists within the terms of the policy, the consignors must similarly comply with the policy provisions. Lloyds has raised in its three motions for summary judgment three different policy provisions to preclude the consignors from recovery here. The court has determined that the third, ¶ 5(A), does not bar recovery by the consignors. The court now addresses

the first two, ¶ 8(A) and ¶ 21, to determine whether or not these coverage defenses failure preclude the grant of summary judgment in favor of the consignors.

### A. The Inventory Clause—Paragraph 8(A)

■ Paragraph 8(A) requires that:

[t]he Assured will maintain a detailed and itemized inventory **of his or their property** and separate listing of all travellers stocks in such a manner that the exact amount of the loss or damage can be accurately determined therefrom by the Underwriters.

(emphasis added). This provision applies by its terms only to the insured's right to recover for losses to their own property. This court previously granted summary judgment in favor of Lloyds to preclude recovery only by Suisse Gold and Golden Door and only for their own property. *Golden Door I,* 748 F.Supp. at 1535–36. Suisse Gold's and Golden Door's own property was that property insured under ¶ 3(A) of the policy.

Paragraph 3 defines three categories of "property insured" as follows:

(A) Pearls, precious and semi-precious stones, jewels, jewellery, [sic] watches and watch movements, gold, silver, platinum, and other precious metals, and alloys and other stock usual to the conduct of the Assured's business, **owned by the Assured;**

\* \* \* \* \* \*

(C) Property as above described, delivered or entrusted to the Assured by others who are dealers in such property or otherwise engaged in the jewellery [sic] trade, but only to the extent of the Assured's own interest therein because of money actually

---

nor's Complaint. Count II alleges that Suisse Gold breached the consignment agreement, by failing to return Westway's property upon demand. Suisse Gold did not respond. No genuine issue of material fact exists. No party disputes that the insured corporations have failed to return the consignors' goods. The insured corporations are legally liable to the consignors for consignors' lost property. *Golden Door I,* 748

F.Supp. at 1536–37, 1543. Although Westway need not first obtain a judgment against Suisse Gold before recovering against Lloyds, this court grants summary judgment in favor of Westway.

**5.** Westway also moved for summary judgment against Suisse Gold. *See supra* n. 4.

advanced thereon, or legal liability for loss or damage thereto.[6]

(emphasis added).

Paragraph 8(A) by its terms applies only to the ¶ 3(A) property of the assured, not the property of others, ¶ 3(C) property. Consignors claim under ¶ 3(C). Thus, ¶ 8(A) is inapplicable to the consignor's and their ¶ 3(C) property.

Moreover, Lloyds has not asserted that the consignors failed to comply with ¶ 8(A) or maintain an accurate inventory. Neither the assured's failure to comply with ¶ 8(A) nor the application of the requirement to the consignors precludes the consignors from recovery.

### B. False or Fraudulent Proof of Loss Provision—Paragraph 21

■ Paragraph 21 provides "[i]f the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this policy shall become void and all claim hereunder shall be forfeited." Lloyds argues that Credin's filing a false and fraudulent proof of loss in violation of ¶ 21 bars coverage.

Again, the separability of the policy is evidenced by its terms, specifically the use of "the Assured" instead of "any Assured." Lloyds asserts that Credin plead guilty, admitted that he staged the robbery and submitted, on behalf of Golden Door and Suisse Gold, a false proof of loss to Lloyds. After the guilty plea the proof of loss was not amended by either Mrs. Credin or anyone else for the corporations. Thus, Lloyds argues, the false proof of loss was ratified by Mrs. Credin and the corporations. *United Chemicals, Inc. v. Welch,* 460 So.2d 540 (Fla. DCA 1984).

First, the doctrine of ratification is simply inapplicable here. The doctrine applies to a principal who disclaims the authority of its agent to bind it while attempting to reap the benefits of the agent's actions. *Id.* at 541. Here, the corporations have not maintained inconsistent positions. The doctrine of ratification would apply here only if the corporations disputed Credin's authority to file the

proofs of loss while demanding payment on them. The *corporations* have done neither and have taken no act to ratify the proofs of loss.

Second, the acts and knowledge of Credin are not imputed to the corporate insureds when Credin acted adversely to the corporations' interests. *See supra; Lanchile Airlines,* 759 F.Supp. at 814. Distinguishing the theft of the gold from the filing of the proof of loss, Lloyds argues that while Credin may have stolen the gold against the corporate interests, he filed the proof of loss for the corporate interests in recovery. The adverse interest rule still applies with respect to Credin's theft and knowledge of the theft. With no imputation of knowledge, the corporations did not know the proof of loss was false. They did not submit a claim knowing it to be false and did not violate ¶ 21. While ¶ 21 would bar recovery by Credin, it would not prevent the corporate insureds from recovering. Likewise, the consignors did not submit a false or fraudulent proof of loss. Paragraph 21 does not bar consignors from recovery.

### 6. Conclusion

Each of Lloyds' three motions for summary judgment fails legally. The consignors do not claim "through the insured." The consignors claim under the legal liability coverage in the policy. None of the policy's provisions preclude the consignors from recovering their losses from Lloyds. No genuine issues of material fact exist that preclude summary judgment in favor of the consignors. Accordingly, it is

ORDERED AND ADJUDGED that:

1) Defendant's First Motion for Summary Judgment, file dated October 12, 1994, is DENIED;

2) Defendant's Second Motion for Summary Judgment, file dated October 27, 1994, is DENIED;

3) Defendant's Third Motion for Summary Judgment, file dated November 8, 1994, is DENIED;

4) Westway Metal Corp's Motion for Summary Judgment Against Suisse Gold, file dated November 21, 1994, is GRANTED;

---

**6.** Subsection (B) of ¶ 3 is irrelevant to this case.

5) Westway Metal Corp's Motion for Summary Judgment Against Peter Frederick Wright et al [Lloyds], file dated November 21, 1994, is GRANTED;

6) Motion of Leach & Garner Company for Summary Judgment Against Defendants Pursuant to Federal Rule of Civil procedure No. 56, file dated November 21, 1994, is GRANTED.

It is FURTHER ORDERED AND ADJUDGED that

1) Final Judgment is hereby ENTERED in favor of Leach & Garner and against Defendants Lloyds and Wright in the principal sum of *$2,661,418.82, less $1,000,* plus interest at 12% per annum *simple interest* from the date of *February 10, 1983.*[7]

2) Final Judgment is hereby ENTERED in favor of Westway and against Defendants Lloyds and Wright in the principal sum of *$4,929,2877.16, less $1,000,* plus interest at 12% per annum *simple interest* from the date of *February 10, 1983.*[7]

DONE AND ORDERED.

---

7. See also this court's order regarding motions to tax costs entered simultaneously herewith.