**FIRST NATIONAL BANK OF CICERO, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. 83 C 2459.

United States District Court, N.D. Illinois.

June 23, 1987.

Richard W. Burke, Michael P. Mullen, Tom W. Stonecipher, Stephen C. Voris, Burke, Griffin, Chomicz & Wienke, Chicago, Ill., for plaintiff.

Andrew F. Sears, David L. Carden, Cofield, Ungaretti, Harris & Slavin, Edward J. Moran, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff First National Bank of Cicero continues its suit to establish bona fide purchaser status in regard to over $2,000,000 worth of stolen securities against the victims of the theft, despite the complicity of its senior loan officer, William Giova, in at least some parts of the scheme to turn the stolen bonds and stock certificates into collateral for loans. The bank's persistence, and creativity in asserting theories of recovery, plus the difficulties in finding the right fit between the law of principal and agent, bona fide purchaser doctrine, and Rule 17f–1(d)(1) of the Securities Exchange Commission Lost and Stolen Securities Program, 17 C.F.R. § 240.17f–1(d)(1), have caused this court to issue three prior opinions and publish two of them. *First National Bank of Cicero v. United States,* 625 F.Supp. 926 (N.D.Ill.1986), 653 F.Supp. 1312 (N.D.Ill.1987). In the second published opinion we reconsidered our earlier denial of three defendants' motions for summary judgment, found that we had failed to realize earlier that certain factual disputes were not material, and granted summary judgment for defendant Lewco Securities Corp. However, we continued to deny the motions of defendants Thomson McKinnon Securities, Inc. and Donaldson, Lufkin & Jenrette Securities Corp.

All the major actors have now returned for what this court hopes will be the last round of this protracted struggle. The bank asks us to reconsider our reconsideration, vacate our judgment for Lewco, and then grant it summary judgment against all defendants. It also seeks leave to amend its complaint by adding tort claims against Lewco, Thomson McKinnon and Donaldson. These new counts would allege that the bank suffered injury because of defendants' negligence in allowing themselves to become victims of theft. All these motions are denied. Thomson McKinnon and Donaldson renew their motions for summary judgment. They finally abandon a focus almost solely on the lack of notice element in bona fide purchaser status, and argue that Giova's conduct indicates an absence of good faith. Lewco moves for an entry of final judgment under Federal Rule of Civil Procedure 54(b). These motions are granted.

## DISCUSSION

The bank, understandably enough, was far happier with this court's earlier opinion in the case than its most recent. However, for purposes of its reconsideration motion the only "new" evidence it offers is testimony from Giova at the criminal trial of David Bruun and Ronald Berkowitz. This testimony has been public record since late 1984, so it cannot be "newly discovered evidence" for purposes of a motion to reconsider. *See Champion Spark Plug Co. v. Gyromat Corp.,* 88

F.R.D. 526, 528 (D.Conn.1980), *aff'd,* 636 F.2d 907 (2d Cir.1981); *Matter of Ionian Shipping Co.,* 49 F.R.D. 334, 337 (S.D.N.Y. 1969). However, Thomson McKinnon and Donaldson wish to rely on other portions of the same testimony. We will construe this unusual circumstance as a mutual waiver of the right to demand that the evidence be newly discovered and look at Giova's testimony.

The bank wants us to see the portion of Giova's testimony where he states that Joseph Schuessler, the bank's chairman, met personally with David Bruun and set the interest rate for the Bruun loans. Giova also testified that Schuessler approved each loan before it was made. The bank now unequivocally admits that Giova was engaged in fraud, though it still contends that he did not know the securities were stolen at the time the loans were made, which correlates with Giova's testimony. The bank thinks that in our last decision we found Giova to be a "sole actor," and wants us to change that finding. In that event, with the admission of Giova's fraud it thinks it can avoid imputation of Giova's knowledge on the basis of the "adverse agent" exception. *See* 653 F.Supp. at 1316, 625 F.Supp. at 932.

Thomson McKinnon and Donaldson direct our attention to Giova's statement that he never called the Securities Information Center about these securities, and indeed had never heard of the SIC. Already on the record from these defendants' first motion for summary judgment is an affidavit from Marilyn Osborne, SIC operations manager. She states that according to SIC records the bank never contacted the SIC about any of the securities in question at any point during the relevant time span, January 1 to June 8, 1982. Thus it seems settled that no one from the bank called the SIC. Indeed, the bank has admitted that Giova was the person charged with calling and now admits that he did not call. However, it characterizes that failure to call as "negligence." Defendants assert that this evidence shows that the bank did not observe reasonable commercial practices with respect to these securities, and therefore the bank cannot show that it took the securities in good faith. *See* 653 F.Supp. at 1319, 625 F.Supp. at 929 n. 1.

Giova's testimony is far more helpful to defendants than to the bank. In the first place, we did not hold that Giova was a "sole actor." We held that on any of the factual scenarios which the bank advanced, "sole actor" or not, Giova's knowledge is imputed to his principal, the bank, as a matter of law. Second, this court granted summary judgment to Lewco on its claim to securities presented as collateral by Edward and Edele Bontkowski, 653 F.Supp. at 1314, and that decision is what the bank now asks us to reconsider. We do not see how contact between Schuessler and *Bruun* affects in any way the question of whether the bank's claim to the *Bontkowskis'* collateral rests on the acts of its agent—unless the bank is conceding a direct connection between Bruun and the Bontkowskis, in which case all its claims would seem to fall through defendants' "domino theory." *See* 653 F.Supp. at 1322. Plaintiff does not seem to argue that Schuessler set the interest rate on the loans to the Bontkowskis. But in any case, setting an interest rate is the kind of act, like approval of the loan application, which would not affect imputation of knowledge. 653 F.Supp. at 1317–1318. This court's judgment for Lewco stands.

Giova's testimony, however, plus Osborne's affidavit and the bank's admissions, decide the outcome for Thomson McKinnon and Donaldson. We held in both opinions that an institution, like the bank, which regularly deals with securities needs to be able to show that it observed reasonable commercial practices with respect to a stolen security in order to establish a status as a bona fide purchaser of it against its owner. 653 F.Supp. at 1319, 625 F.Supp. at 930. Failure to observe such practices can affect either the notice element or the good faith element, or both, of proof for a bona fide purchaser. If observance of them would have turned up notice of an adverse claim, then the purchaser has constructive notice of that claim, which was the ground for our judgment in favor of Lewco. 653 F.Supp. at 1319, 1321. But

the reasonable commercial practices standard for a purchaser who regularly deals with securities also provides an objective test for the usually subjective element of good faith. Uniform Commercial Code comment to § 8–318, Ill.Rev.Stat. ch. 26, ¶ 8–318; *Morgan Guaranty Trust Co. v. Third National Bank*, 400 F.Supp. 383, 390 n. 11 (D.Mass.1975), *aff'd*, 529 F.2d 1141 (1st Cir.1976). For such a purchaser failure to observe reasonable commercial standards in taking a stolen security ordinarily means that the purchaser did not take in good faith. *Oscar Gruss & Son v. First State Bank*, 582 F.2d 424, 434 (7th Cir.1978); *United States Fidelity & Guaranty Co. v. Royal National Bank*, 545 F.2d 1330, 1334 (2d Cir.1976); *Insurance Co. of North America v. United States*, 561 F.Supp. 106, 113 (E.D.Pa.1983). We have already held that no genuine dispute existed here over whether, in these circumstances, reasonable commercial practices would have included calls to the SIC. The bank should have called. 653 F.Supp. at 1321; *accord Insurance Co. of North America v. Manufacturers Hanover Trust Co.*, 106 A.D.2d 285, 483 N.Y.S.2d 3, 4 (1984) (reasonable commercial practices include compliance with 17 C.F.R. § 240.17f–1(d)). It is now undisputed that it did not. The bank cannot establish that it took the securities in good faith.

The bank argues against that conclusion by reviving one of its earlier arguments used against constructive notice and applying it to good faith. *See* 653 F.Supp. at 1320, 625 F.Supp. at 931. "Reasonable commercial practices," it contends, means only that the bank should set up a system for making inquiry. If an individual negligently or intentionally failed to carry out his role in that system, it should not reflect on the bank. Giova, however, was by the bank's own admission the officer expressly charged with validating the collateral here. Ordinary principles of vicarious liability in either contract or tort hold a principal responsible for the legal effect of the acts or omissions of his agent within the scope of these agent's express actual authority. As we stated earlier, "[t]he bank picked the agent, and as between it and an innocent

third party, the bank must bear the consequences of its choice." 653 F.Supp. at 1320. *See also Morgan Guaranty*, 400 F.Supp. at 391 (bank did not take in good faith because its agents failed to observe reasonable commercial practices in investigating customer); 1 Restatement (Second) of the Law of Agency, §§ 214, 252, 261–263 (1958). Moreover, Giova's testimony that he had never heard of the SIC even casts doubt on whether the bank had set up a functioning system. Giova's failure to call is the bank's failure.

It is true, as the bank points out, that if Giova had called the SIC on the collateral for the Bruun loans he would not have learned of an adverse claim. But the Uniform Commercial Code states notice and good faith as separate and distinct standards. Ill.Rev.Stat. ch. 26, ¶¶ 8–302, 1–201(19), 1–201(25); *Gruss*, 582 F.2d at 431–432. If, as the bank contends, one would take in bad faith only when one was on notice, constructive or otherwise, of an adverse claim, then one of the two requirements would merely be surplusage. A failure to observe reasonable commercial practices can independently constitute bad faith which blocks bona fide purchaser status. *See Gruss*, 582 F.2d at 434; *Morgan Guaranty*, 400 F.Supp. at 391.

It is also true, as we noted before, 653 F.Supp. at 1319 n. 2, that the language of UCC § 8–318, Ill.Rev.Stat. ch. 26, ¶ 8–318, the statutory source for the objective standard for the good faith of those who regularly deal in securities, does not precisely fit this case. It was written on the assumption that the owners of securities would be suing the agent or bailee of a thief for conversion, whereas here the bank is suing the United States (now in possession of the securities, following criminal prosecution) and the various owners for a declaration that it is a bona fide purchaser. But we do not think that the code's authors intended the standard of liability to change depending on who got to the courthouse first. *Accord Insurance Co.*, 561 F.Supp. at 114; *cf.* Ill.Rev.Stat. ch. 26, ¶ 1–102(1) (UCC sections to be liberally construed in accordance with overall policies).

Finally, the bank resists the application of the objective standard for good faith by contending that it is not an institution that regularly deals in securities. At the very least, it says, its status in that regard is a question of fact which is in dispute. We disagree. Its status as a reporting institution under 20 C.F.R. § 240.17(f)(1)(A) would seem to settle that issue as a matter of law, and if not, at least the regulation raises a presumption which a mere unsupported denial cannot dislodge. Moreover, most courts presented with the question have held banks to a reasonable commercial practices standard. *Royal*, 545 F.2d at 1334; *Morgan*, 400 F.Supp. at 390–391; *City of Shamokin v. West End National Bank*, 29 Pa.D. & C.3d 338, 39 U.C.C.Rep. Serv. (Callaghan) 266, 270 (C.P. Northumberland 1983); *see also Gruss*, 582 F.2d at 434 (bank cashier held to reasonable commercial practices); *but see Manufacturers Hanover*, 483 N.Y.S.2d at 4 (whether bank regularly dealt with securities was a question of fact).[1]

Furthermore, on this record the bank does not appear to have a colorable argument even for the more generous subjective standard which is applied to persons who do not regularly deal with securities. That standard for good faith is honesty-in-fact in the transaction, UCC § 1–201(19), what has been called the "pure heart, empty head" test. Giova was the bank's agent for determining the validity of collateral, and the bank has admitted that his heart was not pure. It cannot characterize his conduct as fraud for purposes of the notice inquiry and then recharacterize it as mere negligence for purposes of good faith. As we noted in our earlier decision in this case, a principal is liable to innocent victims of his agent's fraud even when the agent's authority in the transaction was not actual but only apparent. 625 F.Supp. at 933, *citing American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566–567, 102 S.Ct. 1935, 1492–1493, 72 L.Ed.2d 330 (1982); *see also* Restatement of Agency, §§ 261–263. If the law does not permit a principal to avoid the consequences of his agent's fraud outside the agent's express authority against innocent third parties, it would also not permit him to avoid the consequences of his agent's bad faith within the agent's express authority by making the principal a bona fide purchaser of the stolen securities if that status would shift the loss to innocent third parties.

Against that conclusion the bank reiterates, as it has on every motion, an argument that anything less than a judgment for it would sound the death knell for the bona fide purchaser doctrine. Policy considerations do conflict here, and not merely the conflict between the desire to punish fraud and the need for relatively easy transfer of negotiable instruments. *See* 625 F.Supp. at 934. The effectiveness of the SIC system is also involved. A decision for the bank against Thomson McKinnon and Donaldson, but against it and for Lewco, actually would encourage the prompt reporting of lost or stolen securities to the SIC, since only those who reported their loss within a reasonable time would regain their securities.

But there is more at stake here than bona fide purchaser law or SIC reporting. Allowing the bank to disavow the fraud of its agent Giova could have a far more disruptive effect on the way our economy works than any trimming of bona fide purchaser doctrine because of such a decision's possible impact on the law of principal and agent. An enormous number of transactions are effected by means of agents; every corporation acts only through agents. That system depends on the ability of third parties to reasonably rely on agents, which in turn depends on legal doctrines which holds principals responsible for their fair share of the acts of their agents. In other words, as a matter of policy the law cannot make it too easy for a principal to escape

---

1. The cases plaintiff cites for the proposition that the objective standard does not apply to banks, *Scarsdale National Bank & Trust Co. v. Toronto-Dominion Bank*, 533 F.Supp. 378 (S.D. N.Y.1982), and *Corporacion Venezolana de Fom-* *ento v. Vintero Sales Corp.*, 452 F.Supp. 1108 (S.D.N.Y.1978), *rev'd on other grounds* 607 F.2d 994 (2d Cir.1979), did not involve securities, let alone stolen securities, so UCC § 8–318 would not apply.

losses, leaving the losses on third parties when his agent helped to cause the loss. When an agent charged with validating the collateral in a transaction participates in a fraud involving that collateral to the extent of getting kickbacks, that constitutes enough subjective bad faith to prevent his principal from claiming bona fide purchaser status in the transaction. The bank could not establish its good faith at trial on either standard.

The bank, perhaps seeing the handwriting on the wall in our last memorandum and order, also seeks leave to amend its complaint to add tort claims alleging negligence. By negligently allowing the securities to be stolen, and by being slow to report the theft, says the bank, defendants' conduct caused the bank's losses. However, particularly when an amendment comes long after the complaint is filed, this court should deny leave to amend where the moving party has not shown that its proposed claim includes both a valid theory of recovery and the facts which would support that theory. *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979); *see also Cohen v. Illinois Institute of Technology*, 581 F.2d 658 (7th Cir.1978), *cert. denied*, 489 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). The bank's proposed amendment offers neither a valid theory nor supporting facts.

The bank's novel theory of recovery resembles pouring salt on a wound, by making the victim of thieves also the defendant in a tort action. Plaintiff can cite only one case which does not involve proof that the owner's employees were involved in the theft and which endorses this novel theory, namely *New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339, 347–348 (3d Cir.1982). Even there, the evidence raised a strong inference that the theft was an "inside job." We know of no precedent which would give the bank a cause of action in Illinois on the mere fact that it and defendants were victimized by the same thieves.

In any case, the facts alleged do not support the theory. Other than allowing the theft itself, the omission on which the bank hopes to base a claim is defendant's failure to promptly report their losses to the SIC. Perhaps under some circumstances a subsequent victim of thieves could have a viable claim under the regulation against a reporting institution on such a theory. But this is the same plaintiff which has insisted all along that it had no obligation to call the SIC and now admits that its agent never called. The bank could not and does not argue that it would have learned information itself from the SIC that would have enabled it to avoid the loss. Rather, it contends that an SIC report would have facilitated a then ongoing FBI investigation, the FBI would have seized the securities, and so the securities never would have reached the bank. That chain of causation, depending on two intermediate actors, the thieves and the FBI, is simply too attenuated to support a negligence claim. Moreover, we do not see how the bank could show that defendants' conduct legally caused its injury when its own agent, Giova, was an associate of the thieves. His presence at the bank presumably attracted the thieves there to seek loans on the securities. We decline to grant leave to amend.

In the end, some innocent party has to lose this case. The bank as a corporation did not plan to take in stolen securities any more than defendants planned to have their securities stolen. But the bank did hire Giova, and Giova was not an innocent party. He says that he did not know that the securities were stolen, but he knew that the loans would not be used for the stated purposes, and the borrowers paid him for arranging the loans. In such situations the best that the law can do is to place the loss on the principal who put the agent in a position he could use for his fraud, rather than on third parties who had no connection with it at all. *Armstrong v. Ashley*, 204 U.S. 272, 283, 27 S.Ct. 270, 274, 51 L.Ed. 482 (1907); *National Acceptance Co. v. Coal Producers Ass'n*, 604 F.2d 540, 542 (7th Cir.1979). At least such allocation of burdens may encourage better selection of, and a closer watch over, agents.

## CONCLUSION

Plaintiff's motions for reconsideration, for summary judgment, and for leave to amend its complaint are denied. The motion of defendant Thomson McKinnon Securities, Inc. and Donaldson, Lufkin & Jenrette Securities Corp. for summary judgment are granted. Defendant Lewco Securities Corp.'s motion for entry of final judgment is granted.