**LANCHILE AIRLINES, Plaintiff,**

**v.**

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY OF NORTH AMERICA, Angel M. Molina and Santiago L. Rodriguez as trustees for S & M Insurance Consultants, Inc., Angel M. Molina, and Santiago L. Rodriguez, Defendants.**

No. 89–0500–CIV.

United States District Court,
S.D. Florida.

March 21, 1991.

Robert Morse, Peter Petesch, Washington, D.C., Renier Cruz, Miami, Fla., for plaintiff.

R. Lawrence Bonner, Miami, Fla., for CIGNA.

Lawrence Major, Coconut Grove, Fla., for Molina.

Santiago L. Rodriguez, pro se.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT CIGNA'S MOTION FOR SUMMARY JUDGMENT, MOTION TO DISMISS AND MOTION FOR PLAINTIFF TO PROVIDE A RICO CASE STATEMENT

MORENO, District Judge.

THIS MATTER is before the Court on defendant's, Connecticut General Life Insurance Company of North America ("CIGNA"), Motion for Summary Judgment, file dated September 26, 1990,[1] Motion to Dismiss, file dated December 18, 1990, and Motion to Provide a Rico Case Statement file dated January 2, 1991. The Court has considered the Motions, responses and replies thereto, the pertinent portions of the record, and oral argument by counsel for all parties on the motion for summary judgment. For the reasons set forth below, the Court DENIES CIGNA's Motion for Summary Judgment, DENIES CIGNA's Motion to Dismiss, and DENIES CIGNA's Motion for Plaintiff to Provide a Rico Case Statement.[2]

In its most simplistic form, this case centers on the conduct of the two principals and their agents in the negotiation and performance of a contract for insurance. Plaintiff LanChile was represented by its agent, defendant Santiago Rodriguez. Defendant CIGNA was represented by its agent, defendant Michael Molina. Unbeknownst to the principals, Rodriguez and Molina were partners in defendant S & M Insurance Consultants, Inc.

Together, defendants Rodriguez and Molina arranged for CIGNA to provide group health insurance benefits to LanChile. LanChile paid for, and received, the insurance that it sought, at the price that it agreed upon, for over four years. LanChile made these payments to S & M, rather than directly to CIGNA.

The crux of this action concerns certain administrative/consulting fees received by S & M. LanChile asserts that the fee

---

1. LanChile's remaining claims against defendant CIGNA are for breach of contract, civil theft and civil RICO. Defendant CIGNA has moved for summary judgment with respect to each count.

2. Defendants Rodriguez and Molina have each filed Motions to Adopt CIGNA's Motion for Summary Judgment. These motions are denied.

arrangement was undisclosed and that it was not until March 1989, over four years after the inception of the contract, that plaintiff allegedly discovered that the premiums it paid for health insurance included a service fee for S & M. CIGNA counters that LanChile was well aware, or at least *should have been,* of the fee arrangement at the time of the contract formation. The total amount paid as a fee to S & M over the four year period is approximately $279,-000.

## MOTION FOR SUMMARY JUDGMENT

### I. STANDARD FOR SUMMARY JUDGMENT

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court enunciated the standard for summary judgment. The Court held that pursuant to Fed.R.Civ.P. 56(c)

> ... [s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Catrett, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552.

### II. FACTUAL BACKGROUND

Beginning in March 1983, LanChile's insurance broker or agent-of-record for group health insurance was Santiago Rodriguez. As LanChile's agent, Rodriguez was charged with finding health insurance coverage for LanChile's employees, at a level of benefits and premium costs acceptable to LanChile.

In late 1983, LanChile, which was then insured by CIGNA, was informed that its insurance premiums would increase by approximately 46 percent for 1984. Juan Matus, LanChile's Head of Administration and Finance for North American, was responsible for obtaining group health insurance for LanChile's employees. Guillermo Goldberg, then General Manager for North America, was responsible for overseeing Mr. Matus, including the administration of LanChile's employee group health insurance. Goldberg and Matus instructed Rodriguez to procure comparable insurance coverage for LanChile's employees at a lower cost to LanChile than the projected 46 percent increase.

In 1983, Michael Molina became CIGNA's group insurance representative for LanChile. Molina, CIGNA's agent, and Rodriguez, LanChile's agent, were also principals and owners of S & M Insurance Consultants, Inc. In late 1983, Molina and Rodriguez proposed to LanChile an insurance plan that not only avoided the scheduled 46% increase in CIGNA's insurance premiums for 1984, but provided approximately a 5% decrease in LanChile's overall cost of insurance.

The plan provided for basic hospitalization coverage to be provided by Empire Blue Cross and Blue Shield of New York with a wraparound major medical plan underwritten by CIGNA. From January 1984 through March 1988, LanChile timely made all premium payments and enjoyed the insurance coverage they were entitled to pursuant to the Blue Cross and CIGNA insurance policies.

### III. LEGAL ANALYSIS

The definitive question in this lawsuit is which party must bear the financial responsibility for the fraudulent acts of an agent. While the general issue has been visited by numerous courts over the years, the Court has found little guidance for the case at bar which contains equally culpable agents representing both principals. CIGNA asks this Court to determine that, as a matter of law, it is less responsible for the acts of its agent than is LanChile for the same acts of its agent. The Court finds that this ultimate conclusion can only be reached upon resolution of numerous factual issues which are hotly contested. Such issues are therefore, questions for the jury.

The issues for determination by the Court as framed by CIGNA, are whether: (1) the knowledge of defendant Rodriguez, as the agent for plaintiff LanChile, can be attributed to LanChile; (2) the "economic

loss rule" precludes an action for civil theft against CIGNA by LanChile; and (3) LanChile has failed to present a colorable Rico claim.

### A. Knowledge and the Breach of Contract Claim

■ CIGNA asserts that each of LanChile's claims for relief necessarily relies on LanChile's contention that it was not informed of the administrative/consulting fees being charged by S & M. CIGNA alleges that LanChile's claims fail because it had actual, constructive and imputed knowledge of the fees it was paying to S & M for its services.

■ LanChile correctly notes that a court must not decide any factual issues it finds in the record. *See, e.g., Borg–Warner Leasing, Div. of Borg–Warner Acceptance Corp. v. Doyle Electric Co.,* 733 F.2d 833 (11th Cir.1984), *cert. denied,* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). It is well-settled that under Florida law, a question of agency is reserved to the trier of fact when resolution of the issue depends on the inferences to be drawn from the facts adduced. *Amerven, Inc. v. Abbadie,* 238 So.2d 321, 322 (Fla. 3d DCA 1970).

It is the most elementary hornbook law that this Court cannot resolve a factual dispute upon a motion for summary judgment as to whether LanChile had actual or constructive knowledge that it was paying S & M a fee for procuring insurance. Actual or constructive knowledge is a factual question; the existence or non-existence of this knowledge is the pivotal fact around which this case turns. Not so clear however, is the issue of whether Rodriguez' knowledge may be imputed to LanChile.

■ Circumstances where knowledge may be imputed typically involve questions of law rather than fact. The general rule is that whatever knowledge an agent acquires within the scope of his authority is imputed to his principal. *First National Bank v. United States,* 653 F.Supp. 1312 (N.D.Ill.1987), *on reconsideration in part,* 664 F.Supp. 1169 (N.D.Ill.1987), *aff'd in part and vacated in part First Nat. Bank v. Lewco Secur. Corp.,* 860 F.2d 1407 (7th Cir.1988), *reh. den. First Nat. Bank v. Lewco Secur. Corp.,* 1988 WL 118808, 1989 U.S. App. LEXIS 2131 (7th Cir.1989).

■ However, knowledge and misconduct of an agent will not be imputed to a principal if an agent is "secretly ... acting adversely to the principal and entirely for his own or another's purposes." *Restatement (Second) of Agency,* § 282 (1958). The law does not then presume that the wrongdoer would perform his usual duty of disclosing all material facts regarding his action if such disclosure would reveal his fraud. *Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551 (S.D.Fla.1990); *Restatement, supra,* § 282(1).

The *Restatement* also provides that a principal will be held to the knowledge of an agent who acts adversely to the principal if: the agent enters into negotiations within the scope of his powers and the person with whom he deals reasonably believes him to be authorized to conduct the transaction; or, before he has changed his position, the principal knowingly retains a benefit through the act of the agent which otherwise he would not have received. *Restatement, supra,* § 282(2)(b) & (c).

The threshold determination then, is whether the agent was "acting adversely." The *Restatement* counsels that the mere fact that the agent's primary interests are not coincident with those of the principal does not prevent the latter from being affected by the knowledge of the agent if the agent is acting for the principal's interests. *Restatement, supra,* § 282, comment c. This comment however does not offer sufficient guidance for the Court to make a legal determination as to whether Rodriguez was secretly acting adversely to LanChile and entirely for his own or S & M's purposes.

The Court is unable to determine as a matter of law, that Rodriguez' conduct in charging LanChile an amount that it had agreed to pay for insurance but was in excess of the actual cost of the insurance, is adverse to LanChile. Similarly, the Court is not convinced that Rodriguez was acting entirely for his own or S & M's

purposes. While Rodriguez retained a portion of the premiums paid by LanChile as an undisclosed fee, he did arrange the health insurance desired and received by LanChile. The Court concludes that these issues are factual determinations that can only be made by the jury.

### B. Economic Loss Rule, Fraud and the Civil Theft and RICO Claims

■ CIGNA's motion for summary judgment as to plaintiff's civil theft claim is premised on CIGNA's assertion that Lan-Chile had knowledge of S & M's receipt of administrative/consulting fees. This Court has already held that LanChile's knowledge or lack thereof is a factual matter for the jury, and not resolvable by this Court on a motion for summary judgment.

■ CIGNA alleges that plaintiff's civil theft claim is precluded by the "economic loss rule." In *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So.2d 899 (Fla.1987), the Florida Supreme Court adopted the "economic loss rule." In order to recover for fraud or civil theft, a claimant must allege identifiable damages independent of the damages allegedly due to the breach of contract.

■ In *AFM Corp. v. Southern Bell Telephone & Telegraph Co.*, 515 So.2d 180 (Fla.1987), the Florida Supreme Court applied the "economic loss rule" to service contracts. Under the rule as adopted in *AFM Corp.*, where a plaintiff suffers purely economic loss as a result of a defendant's negligent or intentional failure to perform its obligations under a contract to provide services to the plaintiff, the plaintiff is precluded from seeking recovery against the defendant under tort theories.

CIGNA argues that LanChile has merely asserted an "ordinary" breach of contract thus precluding a viable cause of action for civil theft. In its Memorandum Opinion of August 23, 1989,[3] this Court determined

that LanChile properly stated a RICO claim. Additionally, LanChile has filed with this Court, numerous invoices and affidavits supporting its allegations of mail and wire fraud. CIGNA asks this Court to ignore such evidence, accept its contention that no mail or wire fraud has occurred as an undisputed fact and grant summary judgment as to plaintiff's civil theft claim. This Court finds that the disputed factual issue as to LanChile's knowledge, and the properly stated and sufficiently supported allegations of fraud under the RICO Act, preclude entry of summary judgment on the claims for civil theft and under the RICO Act.

WHEREFORE, it is hereby ADJUDGED that

In accordance with the foregoing, CIGNA's Motion for Summary Judgment is DENIED. It is further

ADJUDGED that pursuant to footnote 3 above, in addition to the substantial supporting evidence filed by plaintiff, CIGNA's Motion to Dismiss Amended Complaint and Motion for Plaintiff to Provide RICO Case Statement are DENIED.

DONE AND ORDERED.

---

3. CIGNA filed a motion to dismiss the original complaint which was granted in part, and denied in part by Order dated August 23, 1989. CIGNA filed its second motion to dismiss, again alleging that LanChile's civil theft claim (count VII) fails because LanChile's complaint contains

an alternative theory of recovery for breach of contract; and (2) LanChile's Rico claim (count VIII) fails to satisfy Rico's pattern requirement. Both of CIGNA's motions to dismiss travel under the identical theories.