**DEHRES LLC, a New York limited liability company, Rick Shatz, Inc., a New York corporation, J.B. International, LLC d/b/a J. Birnbach, a New York limited liability company, Walter Arnstein, Inc., a New York corporation, Hajibay International, Inc. d/b/a Hajibay & Co., a New York corporation, Norman Silverman Diamonds, Inc., a California corporation, Sorum Diamonds, Inc., a New York corporation, and Joseph Gad Incorporated, d/b/a Joseph Gad & Co., a New York corporation, Plaintiffs,**

v.

**The UNDERWRITERS AT INTEREST AT LLOYDS LONDON subscribing to insurance Certificate No.: N088049/2623 an unincorporated association, Defendants/Third–Party Plaintiffs,**

v.

**Worth Jewelers, Inc., d/b/a Lee Havens Fine Jewelry, a Florida corporation, Third–Party Defendant.**

**Case No. 10–21240–CIV.**

United States District Court, S.D. Florida.

Nov. 29, 2011.

Marc Lawrence Brumer, Brumer & Brumer, Miami, FL, for Plaintiff.

Michael Simon, Simon, Reed & Salazar, P.A., Michael A. Monteverde, Foreman Friedman, P.A., Miami, FL, Owen B. Carragher, Jr., Lankler & Carragher LLP, New York, NY, for Defendant.

*ORDER GRANTING DEFEN-DANTS/THIRD PARTY PLAIN-TIFFS' MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFFS' MOTION FOR SUM-MARY JUDGMENT*

PAUL C. HUCK, District Judge.

THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment (D.E. # 94), filed May 9, 2011, and Defendants/Third–Party Plaintiffs' Motion for Summary Judgment (D.E. # 101), filed May 9, 2011. The Court has carefully reviewed the parties' submissions and is otherwise duly advised in the premises. For the reasons discussed below, the Court grants Defendants/Third–Party Plaintiffs' Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment.

## I. BACKGROUND

### A. Facts

Plaintiffs, Dehres LLC, Rick Shatz, Inc., J.B. International, LLC, Walter Arnstein, Inc., Hajibay International, Inc., Norman Silverman Diamonds, Inc., Sorum Diamonds, Inc., and Joseph Gad Incorporated (collectively "the Consignors") filed this case to collect on an excess jewelers' block insurance policy issued by Defen-

dants/Third–Party Plaintiffs, The Underwriters at Interest at Lloyds, London ("Lloyds"). The Consignors are jewelry wholesalers who consigned $5.6 million of merchandise to Third Party Defendant, Worth Jewelers, Inc., doing business as Lee Havens Fine Jewelry. Lee Havens was the sole shareholder and principal officer of Worth Jewelers. The critical issue is whether the Consignors may recover under the block insurance policy even though Mr. Havens conspired to steal the consigned jewelry from his own company.

On January 11, 2009, Mr. Havens, acting on behalf of Worth Jewelers, reported to the Palm Beach police that an armed man entered his store and stole $5.6 million of jewelry. Over the next several months, Mr. Havens attempted to obtain payment on insurance claims from Lloyds for the stolen jewelry. Worth Jewelers had a primary insurance policy and an excess insurance policy for the jewelry in the store. The primary policy, number N088033/2623, provided $2 million in coverage for loss. The excess policy, number N088049/2623, provided additional $3 million of coverage. Both policies named the sole assured as "Worth Jewelers, Inc. DBA Lee Havens Fine Jewelry." In order to obtain the insurance reimbursement under both policies, Mr. Havens provided three sworn proof of loss statements and submitted to four examinations under oath. Upon accepting Worth Jewelers' proof of loss, Lloyds paid the $2 million limit on the primary policy directly to the Consignors. In mid-October 2009, after further investigation, Lloyds announced its intent to pay the Consignors an additional $3 million, the limits of the excess policy.

On November 26, 2009, police arrested Mr. Havens, alleging that he had arranged the robbery of his own store. Mr. Havens was charged with nine felony counts, including robbery, kidnapping, grand theft, and insurance fraud.[1] The next day, November 27, 2009, Lloyds indicated that it was revoking its previous acceptance of the proof of loss for the excess policy. On December 23, 2009, Lloyds sent a rescission letter to the Consignors, indicating that it was rescinding the excess policy due to pre-loss and post-loss fraud by Mr. Havens. The post-loss fraud claims relate to allegations that Mr. Havens staged the theft of the jewelry and submitted a fraudulent insurance claim to Lloyds. The pre-loss fraud comprises Mr. Havens' alleged misrepresentations on insurance applications that he submitted to Lloyds annually from 2006 to 2008. Specifically, Lloyds asserts that Mr. Havens materially understated the value of the inventory maintained by Worth Jewelers at the time that he filed each application, and during the twelve months prior to filing each application. Lloyds also asserts that Mr. Havens misrepresented the frequency of physical inventory checks performed by Worth Jewelers. For example, in the applications, Worth Jewelers asserted that its inventory levels never exceeded $4.5 million during the 12 months prior to applying for excess coverage for the 2006–2007 and 2007–2008 policy years. For the 2008–2009 policy application, Worth Jewelers indicated that its maximum inventory during the prior twelve months was $4.75 million. Lloyds asserts that these statements were false for several reasons, including that Worth Jewelers did not perform physical inventory checks prior to submitting the applications and that the inventory levels grossly exceeded Worth Jewelers' representations. Lloyds points to evidence showing that during the twelve months prior to the 2006 excess policy application,

---

**1.** The parties have filed a Joint Stipulation of the Criminal Guilt of Vernon Lee Havens (D.E. # 156–2) stipulating to the guilt of Mr. Havens.

Worth Jewelers had inventory valued up to $8.7 million. Prior to the 2007 and 2008 applications, Lloyds asserts that Worth Jewelers' maximum physical inventory was valued at $9.2 million and $10.1 million, respectively.

In a separate action, the Consignors sued Worth Jewelers for losses related to the alleged theft. On April 13, 2010, the Consignors obtained a default judgment against Worth Jewelers. On April 16, 2010, the Consignors filed the instant suit against Lloyds, alleging breach of the excess policy. The Consignors and Lloyds have filed cross-motions for summary judgment.

## B. Contentions of the Parties

Lloyds argues that it is entitled to summary judgment on three grounds. First, Lloyds argues that the excess policy is void *ab initio* under the doctrine of *uberrimae fidei* (*i.e.*, the doctrine of utmost good faith) and under Fla. Stat. § 627.409 because of Mr. Havens' misrepresentations. Lloyds argues that Mr. Havens' pre-loss misrepresentations regarding the value of merchandise in stock at Worth Jewelers and the frequency by which annual inventory calculations were conducted void the excess policy. Lloyds argues the excess policy is void because Mr. Havens violated the doctrine of *uberrimae fidei*, which imposes an affirmative duty on an assured to disclose all facts material to the calculation of risk. *See HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir.1984).

Moreover, Lloyds contends that it is immaterial whether the misrepresentation is made mistakenly or intentionally. Lloyds argues that the Consignors are not entitled to recover under the excess policy pursuant to Fla. Stat § 627.409 (providing that recovery under an insurance policy may be prevented by a misrepresentation when an insurer would not have issued the policy if the true facts were known).

Second, Lloyds argues that the Consignors submitted proofs of loss that indicate their losses occurred eight months after the expiration of the excess policy. Each of the Consignors submitted proofs of loss stating that the date of loss was November 25, 2009. Yet Lloyds sent a letter to Worth Jewelers on February 11, 2009 stating that the primary and excess policies would not be renewed. The last day of coverage under the policies was, according to Lloyds, March 29, 2009.[2]

Third, Lloyds argues that the Consignors are not entitled to recover under the excess policy because the terms and conditions of the policy preclude recovery. The excess policy, which incorporated the terms and exclusions of the primary policy, provides:

5) THIS CERTIFICATE INSURES AGAINST ALL RISKS OF LOSS OR DAMAGE TO THE ABOVE DESCRIBED PROPERTY ARISING FROM ANY CAUSE WHATSOEVER EXCEPT:

a) Loss, damage or expense caused by or resulting from sabotage, theft, con-

---

**2.** The Consignors argue that the submission of November 25, 2009 as the date of loss is attributable to an obvious mistake in the proofs of loss. The Consignors also argue that the proofs of loss detail the circumstances under which the loss occurred, including the January 11, 2009 robbery. Moreover, the Consignors argue that the let-

ter revoking its previous acceptance of the proofs of loss by did not mention that the alleged loss occurred after the expiration of the excess policy. *See* Answer, Ex. B (D.E. # 6–3). Because Lloyds was not prejudiced, the Consignors contend that a mistake should not affect their right to recover.

version or other act or omission of a dishonest character

(1) on the part of the Assured or his or their employees, whether or not such acts are committed during regular business hours, or

(2) on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever
. . .

The excess policy also provides:

21) This entire Insurance shall be void if, whether before or after a loss, the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in the case of any fraud or false swearing by the Assured relating thereto. If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Insurance shall become void and all claim hereunder shall be forfeited.

Lloyds argues that Worth Jewelers was the alter ego of Mr. Havens, and as such, his alleged post- and pre-loss misrepresentations should be imputed to Worth Jewelers, barring recovery under Paragraph 5(a)(1). Lloyds also argues that recovery is precluded under 5(a)(2) because the Consignors entrusted their merchandise to Mr. Havens individually and not Worth Jewelers. Lloyds asserts that consignment memoranda indicate that the Consignors entrusted their merchandise to either "Lee Havens," "Lee Havens Inc.," or "Lee Havens Fine Jewelry." Lastly, Lloyds argues that the excess policy is void under Paragraph 21 because Mr. Havens submitted a false insurance claim.

The Consignors argue that they are entitled to summary judgment for three reasons. First, the Consignors argue that

they are innocent co-assureds who may recover under the legal liability provisions of the excess policy, regardless of whether Mr. Havens committed pre-loss or post-loss misrepresentations. The excess policy covers the following property

PROPERTY INSURED

3) The property insured is as follows:

a) Pearls, precious and semi-precious stones, jewels, jewelry, watches and watch movements, gold, silver, platinum, other previous metals, and alloys and other stock usual to the conduct of the Assured's business owned by the Assured;

b) Property as above described, delivered or entrusted to the Assured by others who are not dealers in such property or otherwise engaged in the jewelry trade;

c) Property as above described, delivered or entrusted to the Assured by others who are dealers in such property or otherwise engaged in the jewelry trade, but only to the extent to the Assured's own actual interest therein because of money actually advanced thereon, or legal liability for loss or damage thereto.

The Consignors argue that because the policy uses the term "the Assured" rather than "an assured," the policy exclusions are severable. Relying on the *Golden Door* line of cases, the Consignors argue that Mr. Havens was not an "employee" of Worth Jewelers but rather the owner and officer. Therefore the exception of 5(a)(1)—covering dishonest acts by employees—does not bar coverage. The Consignors argue that it is immaterial that *Golden Door* did not involve any pre-loss fraud because the language of Paragraph 21 applies equally to alleged pre-loss and post-loss fraud.

Second, the Consignors argue that Lloyds waived the remedy of rescission for Mr. Havens' pre-loss misrepresentations by accepting Worth Jewelers' proof of loss and ratifying the excess policy insurance contract after conducting its own investigation.

Third, the Consignors argue that Mr. Havens did not misrepresent inventory levels on the insurance application for the excess policy. The Consignors argue that Lloyds waived the innocent misrepresentation standard contained in Fla. Stat. § 627.409 because the insurance application states that "any intentional misrepresentation of any information is considered insurance fraud." They also argue that the application questionnaire only asked for an estimate of the value of the merchandise, and that Mr. Havens gave a good faith estimate of the value of Worth Jewelers' inventory.

## II. *ANALYSIS*

### A. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law, and might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if a rational trier of fact may find for the non-moving party based on the record taken as a whole. *Allen*, 121 F.3d at 646. In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1374 (11th Cir.1996). When evaluating cross-motions for summary judgment, as here, the Court analyzes each motion on its own merits and views the facts in each motion in the light most favorable to the respective non-movant. *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07–20696, 2009 WL 3387689, *3 (S.D.Fla. Oct. 16, 2009).

The movant bears the initial responsibility of informing the Court of the basis for its motion, and the particular parts of the record demonstrating that no genuine issue as to a material fact exists. Fed. R.Civ.P. 56(c)(1)(A). The opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. If the non-moving party fails to make a sufficient showing on an essential element of the case, or proffers only conclusory allegations, conjecture, or evidence that is merely colorable and not significantly probative, the moving party is entitled to summary judgment. *Id.*

### B. The Consignors' Right of Recovery under *Golden Door*

■ A consignor may recover directly from the insurer on a jewelers' block insurance policy as a third-party beneficiary or under the legal liability provision of the insurance agreement. However, this recovery is subject to the same terms and conditions of the agreement applicable to the named assureds. This right of recovery was articulated by this Court and the Eleventh Circuit in a series of orders and opinions in *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters*. *See Golden Door Jewelry Creations, Inc. v.*

*Lloyds Underwriters (Golden Door I),* 748 F.Supp. 1529 (S.D.Fla.1990); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters (Golden Door II),* 758 F.Supp. 708 (S.D.Fla.1991); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters (Golden Door III),* 8 F.3d 760 (11th Cir.1993); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters (Golden Door IV),* 865 F.Supp. 1516 (S.D.Fla.1994); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters (Golden Door V),* 888 F.Supp. 1150 (S.D.Fla.1995); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters (Golden Door VI),* 117 F.3d 1328 (11th Cir.1998).

■ The Court will first determine how the *Golden Door* cases apply to the facts in the instant cause. The Court must then turn to whether the policy exclusions contained in the excess policy preclude the Consignors' recovery. Specifically, the Court will ascertain whether the actions of Mr. Havens can be properly imputed to Worth Jewelers under the adverse interest and sole actor doctrines. For the reason stated below, the Court finds that Mr. Havens' actions are imputed to Worth Jewelers thereby barring the Consignors from recovering under the excess policy.

### 1. The Golden Door Cases

The facts of the *Golden Door* series of cases are similar to those of the instant case. In *Golden Door,* Sanford Credin (also referred to as Credini by the Eleventh Circuit) and his wife each owned fifty percent of two companies, Golden Door Jewelry Creations and Suisse Gold Assayer & Refinery. Mr. Credin was the president and principal officer of both corporations. Both companies obtained gold supplies on consignment from Leach & Garner Company and Westway Metals Corporation. In 1981, Golden Door and Suisse Gold purchased a "jeweller's [sic] block policy" from Lloyds Underwriters Non–Marine Association and its representative underwriter. The policy named "the Assured" as "Sanford Credin, doing business as Golden Door ... and/or Suisse Gold." In 1983, an unknown party, later identified as Mr. Credin, stole $9,000,000 of merchandise from Golden Door and Suisse Gold. At the time of the loss, the policy covered each company for $6,000,000. The policy named Westway as a "loss payee" for the coverage afforded to Suisse Gold. Leach & Garner was not named as a loss payee.

Mr. Credin eventually was arrested and, after fleeing the country and being extradited to the United States, pled guilty to conspiracy. Prior to his arrest, Golden Door and Suisse Gold brought an action for breach of contract against Lloyds, seeking to recover under the insurance policy. Both consignors Leach & Garner and Westway intervened in that action as plaintiffs, asserting their rights to recover as consignor-beneficiaries. Leach & Garner and Westway filed for summary judgment.

The district court initially granted the motion, finding that the consignors had a direct right of recovery (1) as third-party beneficiaries, (2) under the legal liability of Golden Door and Suisse Gold, or (3) pursuant to a reformation of the contract giving the consignors status as loss payees and/or named co-assureds. *Golden Door I,* 748 F.Supp. at 1546–47. The district court reformed the contract to provide the consignors direct right of recovery, and held that the policy exclusions were inapplicable to the consignors. *Id.* at 1543–46.

The Eleventh Circuit reversed the district court and held that reformation of the contract was improper. *See Golden Door III,* 8 F.3d at 768. Because reformation was improper, the Eleventh Circuit held that Leach & Garner and Westway did not

have a direct path to recovery absent the policy exclusions. *Id.* at 767 n. 11 (stating that an "interest may have been created in the consignors ... but that interest was within—not without—the terms of the policy and was not significant enough to give consignors a direct right of recovery"). However, the Eleventh Circuit noted that the jewelers' block policy included coverage for the legal liability of the assured deriving from the property loss under Paragraph 3(c) of the policy, which is identical to that in the instant case. *Id.* at 765. The Eleventh Circuit remanded to the district court to determine whether Mr. Credin's theft breached the insurance policy's exclusions precluding coverage for all parties.

On remand, the district court began its analysis by noting that Mr. Credin, Golden Door, and Suisse Gold were "Assureds" for the purpose of the policy exclusions. *Golden Door V,* 888 F.Supp. at 1155–56. The court held that the consignors could recover pursuant to the legal liability provision because the coverage exclusions were severable and only precluded recovery by the assured who arranged the theft. *Id.* at 1155–57. The court held that Golden Door and Suisse Gold were innocent assureds. The district court held that Mr. Credin's dishonest acts could not be imputed to Golden Door and Suisse Gold because "under Florida law the knowledge and misconduct of a corporate agent 'will not be imputed to a principal if the agent is secretly acting adversely to the principal and for his own or another's purposes." *Id.* at 1156 (quoting *LanChile Airlines v. Connecticut General Life Insurance Co.,* 759 F.Supp. 811, 814 (S.D.Fla.1991)). The court found Mr. Credin was, in fact, acting adversely to the corporations' interests by stealing merchandise belonging Golden Door and Suisse Gold, as well as the consignors.

The district court rejected the defendant's argument that Mr. Credin's knowledge and actions should be imputed to the corporations because he was the sole actor on the transaction. *Id.* The court noted that the "sole actor doctrine" provides that "where an agent is a sole representative in a transaction, the principal will be charged with the agent's knowledge if the principal seeks to retain the benefit of the transaction." *Id.* (citing *Vail National Bank v. Finkelman,* 800 P.2d 1342, 1345 (Col.App. 1990)). The district court found that there was "no Florida case support" for the application of the sole actor doctrine. *Id.* at 1156.

The Eleventh Circuit agreed with the district court and held that the consignors could recover directly against Lloyds pursuant to the legal liability provisions of the policy, provided the terms and conditions of the policy did not preclude recovery. *Golden Door VI,* 117 F.3d at 1336. The court noted that the severability of the insurance contracts protected a named assured from the contractually violative acts of a co-assured. *Id.* at 1336. The Eleventh Circuit also noted that Florida law prohibited attributing the acts of a corporate officer to the corporation where the officer acted adversely to the interests of the corporate entity. *Id.* at 1338–39. The Eleventh Circuit did not reach the issue of whether Mr. Credin's actions should be imputed to the corporations under the sole actor doctrine because the defendant had waived the argument. *Id.* at 1338 n. 7. The Eleventh Circuit held that the policy exclusions did not bar the consignors from recovery. Mr. Credin's theft and subsequent filing of a fraudulent insurance claim for the loss benefited himself, not Golden Door or Suisse Gold. Therefore, the consignors, Leach & Garner and Westway, were not barred from recovery pursuant to the insurance policy.

## 2. Applicability to the Instant Case

As mentioned above, the facts of the present case are remarkably similar to those in the *Golden Door* line. The Consignors, who were not named as loss-payees, consigned jewelry to Worth Jewelers. Worth Jewelers obtained block jewelers' insurance for the jewelry in its possession. Under the excess policy, Worth Jewelers d/b/a Lee Havens Fine Jewelry is the only named assured. Paragraph 3(c) of the policy in *Golden Door*, which defines the property covered including coverage for legal liability of Worth Jewelers, is identical to that in the instant case. Paragraphs 5(a) and 21, which respectively bars recovery for losses due to the dishonest acts of employees and voids the policy upon the misrepresentation of a material fact, are also identical to that in the excess policy. The parties have stipulated to the guilt of Mr. Havens, and the liability of Worth Jewelers to the Consignors has been established through the default judgment.

Lloyds attempts to distinguish *Golden Door* from the instant case on two grounds. First, it argues that the Consignors are neither named assureds nor named loss-payees under the excess policy. This argument, however, fails because neither the district court nor the Eleventh Circuit considered it dispositive that Leach & Garner was not listed as a loan payee, although Westway was.

Second, Lloyds argues that the Consignors are not co-assureds under the excess policy, because they are not named to the policy. It is undisputed that there is only one assured named in the excess policy, Worth Jewelers. However, as mentioned above, Leach & Garner was not named in the policy at issue in *Golden Door*. Lloyds' argument is inconsequential because it does not address Worth Jewelers' relative position compared to Mr. Havens. In *Golden Door*, although Mr. Credin—who was named as a co-assured—was not an innocent co-assured, Golden Door and Suisse Gold were. Thus, the district court and Eleventh Circuit held that the policy was severable as to the innocent co-assureds. Leach & Garner's and Westway's recovery hinged on the innocence of Golden Door and Suisse Gold, not Mr. Credin's status as a co-assured, or on whether either Leach & Garner or Westway were named as loss payees in the policy. Lloyds is, however, correct that there is no severability issue here, because Worth Jewelers is the only assured under the excess policy. Here, the Consignors' recovery similarly depends on Worth Jewelers' innocence. Thus, because the Consignors' right of recovery depends on whether Worth Jewelers was an innocent assured, the Court necessarily turns to whether the acts of Mr. Havens should be imputed to Worth Jewelers.

## C. Imputation of Lee Havens' Acts

The Consignors argue in their supplemental briefing that the acts of Mr. Havens should not be imputed to Worth Jewelers even though Mr. Havens was the corporation's sole shareholder and principal officer. Relying, again on *Golden Door*, the Consignors argue (1) that Mr. Havens' acts cannot be attributed to Worth Jewelers because he was acting adversely to the corporation's interests, and (2) Mr. Havens was not an "employee" of Worth Jewelers for purposes of the excess policy. In *Golden Door V*, the district court held that because neither Suisse Gold nor Golden Door sought to benefit from the robbery, the acts of Mr. Credin were not imputed to the corporations. *Golden Door V*, 888 F.Supp. at 1156. The Eleventh Circuit affirmed the district court's holding. *See Golden Door VI*, 117 F.3d at 1338–39. The Eleventh Circuit held that "Florida law prohibits attributing the acts of a cor-

porate officer to the corporation where the officer to the corporation acts outside of his authority or adversely to the interests of the corporate entity." *Id.* Because Mr. Credin acted adversely to the companies' interests, Suisse Gold and Golden Door were considered innocent co-assureds. The Eleventh Circuit also affirmed the district court's holding that Mr. Credin was not an "employee" for the purposes of Paragraph 5(a) but was rather an "officer" of the Suisse Gold and Golden Door. *Id.* at 1338. The Consignors contend that the facts of Golden Door and the instant case are indistinguishable and, as such, the Court should not attribute the acts of Mr. Havens to Worth Jewelers.

Lloyds argues that under the sole actor doctrine, the acts of Mr. Havens should be attributable to Worth Jewelers because (1) Mr. Havens and Worth Jewelers were alter egos, (2) Mr. Havens was not acting adversely to the interests of Worth Jewelers, and (3) that Mr. Havens was an employee of Worth Jewelers for purposes of Paragraph 5(a)(1). In support of its contention that Mr. Havens and Worth Jewelers were alter egos, Lloyds points to several affidavits whereby the Consignors state that they were under the belief that Mr. Havens and Worth Jewelers were one and the same. *See* Birnbach Decl. (D.E. # 105–3) at 40–41; Hajibay Decl. (D.E. # 105–5) at 82–4; Gad Decl. (D.E. # 105–7) at 67. Lloyds also notes that there is no dispute that Mr. Havens was the sole shareholder and principal officer of Worth Jewelers, and that he had sole authority to make business decisions relating to the corporation's operations.

Second, Lloyds argues that by robbing his store, Mr. Havens was not acting adversely to the corporation's interests.

Lloyds offers several affidavits in support of its contention that Mr. Havens staged the robbery to obtain the necessary capital to keep Worth Jewelers afloat. *See* Cowheard Decl. (D.E. # 103–1) at ¶¶ 36–48 (describing the financial conditions of Worth Jewelers); Yakov Decl. (D.E. # 100–30) at ¶ 2(n) (stating that Mr. Havens had expressed that he was having financial difficulties); Havens EUO (D.E. # 97–5), at 553–54, 620–21, 634 (noting that Mr. Havens had used some of his own money to support Worth Jewelers and wished to continue the business).[3] Therefore, Lloyds contends that Mr. Havens' actions were not adverse to Worth Jewelers, and therefore should be imputed to the corporate entity.

Third, Lloyds argues that the Consignors have admitted that Mr. Havens was an employee of Worth Jewelers. *See* Compl. (D.E. # 1) at ¶ 17 (stating that "WORTH JEWELERS' principal employee Lee Havens was arrested on November 26, 2009"). Because Mr. Havens was an employee of Worth Jewelers, Lloyds argues that the excess policy by its terms prevents the Consignors from recovering.

■■■ Florida law establishes that the acts of an agent will not be imputed to a corporation when those acts are adverse to the interests of the corporation. *See Tew v. Chase Manhattan Bank N.A.,* 728 F.Supp. 1551, 1560 (S.D.Fla.1990) ("If the agent is acting adversely to the principal's interests, the knowledge and misconduct of the agent are not imputed."); *Nerbonne, N.V. v. Lake Bryan Int'l Props.,* 685 So.2d 1029, 1031 (Fla. 5th DCA 1997) (stating that the adverse interest exception "bars imputation of knowledge from the agent to the corporation when the agent's conduct

---

**3.** The parties have stipulated that the Court may consider portions of the examination under oath ("EUO") that have been specifically cited in connection with the cross-motions for summary judgment. *See* Joint Stipulation (D.E. # 156–1) at ¶ 5.

raises a clear presumption that he would not communicate to the principal the facts in controversy"); *State, Dep't of Ins. v. Blackburn*, 633 So.2d 521, 524 (Fla. 2d DCA 1994) ("where it is alleged that the agents were acting adversely to the corporation's interests, the knowledge and misconduct of the agent are not imputed to the corporation"); *Seidman & Seidman v. Gee*, 625 So.2d 1, 2–3 (Fla. 3d DCA 1992) (noting that "an exception to the imputation rule exists where an individual is acting adversely to the corporation ... [i]n that situation, the officer's knowledge and conduct are not imputed to the corporation."). However, the adverse interest exception is itself subject to an exception—the sole actor doctrine. The sole actor doctrine provides that the actions of a corporate agent will be imputed to the corporation when the agent is the sole actor on the transaction, even if those actions are adverse to the corporation's interests.

In *Golden Door V*, the District Court held that the sole actor doctrine was inapplicable as there was "no Florida case support" in favor of its application. *Golden Door V*, 888 F.Supp. at 1156. However, a Florida court has since adopted the sole actor doctrine, holding that a claim of adverse interest cannot be invoked where the "corporate actors whose conduct is at issue were the 'alter egos' of the corporation." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So.2d 1039, 1045 (Fla. 2d DCA 2007) (quoting *Terlecky v. Hurd (In re Dublin Sec.)*, 133 F.3d 377, 380 (6th Cir. 1997)). The Florida Second District Court of Appeal stated that this principle is applicable in instances where there is no "innocent member of management who could act to thwart the wrongdoing." *Id.* The misconduct of a corporate agent will be imputed where the corporation has been operated as an " 'engine of theft.' " *Id.* (quoting *Cenco, Inc. v. Seidman &*

*Seidman*, 686 F.2d 449, 454 (7th Cir.1982)). A third party defrauded by a corporate agent can rely on the sole actor doctrine so "that the corporation, rather than the third party, should suffer at the hands of the corporate agent.' " *Id.* (quoting *Nerbonne*, 685 So.2d at 1032). Other courts have come to view the sole actor doctrine as part of Florida law. *See Springel v. Prosser (In re Prosser)*, No. 08–03002, 2009 WL 3270765, *7 (Bankr.D.V.I. Oct. 9, 2009) (noting that under Florida law, the adverse interest exception does not apply where the corporate actor is the alter ego of the corporation); *Welt v. EfloorTrade, LLC (In re Phoenix Diversified Inv. Corp.)*, 439 B.R. 231, 242 (Bankr.S.D.Fla.2010) ("Even if the agent's misconduct is calculated to benefit only the agent, to the detriment of its principal, imputation is still proper where the 'sole actor' doctrine applies." (quoting *O'Halloran*, 969 So.2d at 1045)); *Mirabilis Ventures, Inc. v. Rachlin, Cohen, & Holtz, LLP (In re Mirabilis Ventures, Inc.)*, No. 09–cv–271–Orl–31DAB, 2011 WL 397788, *3 (M.D.Fla. Feb. 1, 2011) ("the adverse interest exception cannot be invoked where the corporate actors whose conduct is at issue were the 'alter egos' of the corporation—where the corporation was wholly dominated by persons engaged in wrongdoing" (citing *O'Halloran*, 969 So.2d at 1045)).

It is undisputed that Mr. Havens was the President, principal officer, and sole shareholder of Worth Jewelers. It is also undisputed that Mr. Havens had sole authority to conduct the operations of the corporation. Several of the Consignors have testified that Mr. Havens and Worth Jewelers were one and the same. *See* Birnbach Decl. (D.E. # 105–3) at 40–41; Hajibay Decl. (D.E. # 105–5) at 82–4; Gad Decl. (D.E. # 105–7) at 67. Effectively, Mr. Havens and Worth Jewelers were indistinguishable. As Mr. Havens was the sole owner and principal officer of the

corporation, "there was no one to whom to impart his knowledge and no one from whom he may conceal it." *Gordon v. Basroon (In re Plaza Mortg. & Fin. Corp.),* 187 B.R. 37, 45 n. 6 (Bankr.N.D.Ga.1995) (citation omitted). Worth Jewelers therefore knew of all of Mr. Havens' misrepresentations and fraudulent conduct. Mr. Havens' actions are thus properly imputed to the corporation, Worth Jewelers. Viewing the facts most favorable to the Consignors, and assuming *arguendo* that Mr. Havens' misrepresentations and fraudulent conduct were completely adverse to Worth Jewelers' corporate interests, imputing Mr. Havens' actions to the corporate entity is still appropriate because Mr. Havens and Worth Jewelers were alter egos of each other. Worth Jewelers cannot be considered an innocent assured under the excess policy.

## III. *CONCLUSION*

For the reasons stated above, the Court concludes that Mr. Havens and Worth Jewelers were alter egos, and as such, the misrepresentations and fraudulent conduct of Mr. Havens are properly imputed to Worth Jewelers. The Consignors' right of recovery is therefore barred under Paragraphs 5(a)(1) and 21 of the excess policy because Worth Jewelers is not an innocent assured. Because the Consignors are barred from recovery, the Court does not need to address the additional issues raised by the parties. Accordingly, it is hereby

ORDERED that Defendants/Third Party Plaintiffs' Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED. The Court will enter a separate order entering final judgment and closing the case.